EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José L. Otero Mercado, et al<br><br>Peticionario<br><br>v.<br><br>Toyota de Puerto Rico Corp, et al<br><br>Recurrido | Certiorari<br><br>2005 TSPR 8<br><br>163 DPR \_\_\_\_ |

Número del Caso: CC-2003-567

Fecha: 3 de febrero de 2005

Tribunal de Circuito de Apelaciones:

        Circuito Regional III de Arecibo/Utuado

Juez Ponente:

        Hon. Jorge L. Escribano Medina

Abogado de la Parte Peticionaria:

        Lcdo. Andrés L. Córdova

Abogado de la Parte Recurrida:

        Lcdo. David Rodríguez Encarnación

Materia: Mercancía Defectuosa; Incumplimiento de Garantía

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José L. Otero Mercado, et al

      Peticionario

         v.

Toyota de Puerto Rico Corp, et       CC-2003-567
al

      Recurrido

PER CURIAM

San Juan, Puerto Rico, a 3 de febrero de 2005.

Mediante el recurso presentado ante nos, los peticionarios solicitan de este Tribunal, la revisión de la Sentencia emitida por el Tribunal de Apelaciones el 20 de mayo de 2003, mediante la cual se revocó una decisión del Departamento de Asuntos del Consumidor que declaró nulo un contrato de compraventa de un vehículo de motor otorgado por las partes en el caso de epígrafe, por alegado vicio en el consentimiento, por dolo y práctica engañosa.

I

El 25 de agosto de 2001, el señor José L. Otero Mercado adquirió de SHVP Motors Corp., haciendo negocios como Triangle Toyota El Comandante, en adelante Triangle Toyota, mediante compraventa, un vehículo de motor marca Toyota, modelo Camry, del año 2001, nuevo, color blanco, tablilla ELX-165, con un millaje de ochocientas cuarenta (840) millas, por el convenido precio de veinte mil ($20,000.00) dólares.[1] El peticionario entregó un pronto pago de cuatro mil ($4,000.00) dólares, y luego de añadir los cargos por seguro, financiamiento y otras partidas, quedó una deuda a ser pagada de diecinueve mil diecisiete ($19,017.00) dólares. El vehículo fue financiado a través de Toyota Financial Services[2]. Se comprometió a satisfacer la obligación en setenta y dos (72) plazos mensuales de trescientos ochenta y dos dólares con treinta y un centavos ($382.31) cada uno. Mientras el señor Otero Mercado se encontraba en las gestiones de compra del vehículo, se percató de que una de las puertas del mismo no cerraba bien, se lo informó a la vendedora y ésta alegadamente le indicó que eso no era problema, que el

_____

[1] Apéndice del recurso de Certiorari, págs. 17 y 20.

[2] En la querella, esta entidad aparece con el nombre de Toyota Credit de P.R. Corp., pero en todo el proceso posterior a la querella, comparece como Toyota Financial Services.

vehículo sería llevado al taller.[3] Durante el proceso de compra, se completaron y firmaron varios documentos. El señor Otero Mercado firmó la solicitud de crédito, la cual en su encasillado número dos (2) indica los datos descriptivos del vehículo objeto de la controversia de marras. Como parte de esta información, en el espacio donde aparece el millaje, aparece indicada la palabra "DEMO", abreviatura que hace referencia a que el vehículo fue utilizado como demostración. Sin embargo, otros dos documentos firmados por el señor Otero, titulados "Contrato de Venta al por Menor a Plazos" y "Orden de Compra", señalan que el vehículo obtenido por el peticionario es nuevo y el millaje indicado es de ochocientas cuarenta (840) millas recorridas. Tras suscribir el mencionado contrato y una vez terminado el proceso de compra y financiamiento, el señor Otero se llevó el vehículo de las facilidades del "dealer".

El 10 de septiembre de 2001, el peticionario acudió al "dealer" y adujo, según el técnico automotriz señor Luis Iván Rodríguez Ayala, que una de las puertas del vehículo no cerraba bien, que había un descuadre en el bonete y en el tapa lodo.[4] El señor Rodríguez Ayala, empleado de Toyota

---

[3] Transcripción de la vista en su fondo, Apéndice del recurso de certiorari, pág. 286.
[4] Véase copia de reclamación a Triangle Toyota, con fecha de 10 de septiembre de 2001, Apéndice del recurso de Certiorari, pág. 2; Transcripción de la vista en su fondo, supra, pág. 351.

de Puerto Rico, Corp., inspeccionó el vehículo y concluyó que los defectos que alegaba el señor Otero eran "comercialmente aceptables" y que "no los veía como defectos".[5]

El 5 de diciembre de 2001, el peticionario llevó el vehículo a ser inspeccionado por el señor Guillermo Cabrera, hojalatero de 30 años de experiencia, al taller "Cabrera Auto Collision", localizado en la Avenida Estación número 218 en el pueblo de Isabela. Tras inspeccionar el vehículo en controversia, el señor Cabrera hizo las siguientes observaciones:

> a)que el frente estaba descuadrado completo, b)que el panel de fusible estaba fuera de sitio, c)la puerta LH no cierra perfectamente, **porque el panel de instrumento[s] se lo impide al ser impactado no quedó correctamente ensamblado**, d) el cristal trasero está fuera de sitio.[6] (Énfasis suplido)

El 11 de diciembre de 2001, sin haber realizado ningún pago mensual de la deuda contraída, el señor Otero Mercado radicó en el Departamento de Asuntos del consumidor, en adelante D.A.C.O., una querella en contra de Triangle Toyota, Toyota Financial Services y Toyota de P.R. Corp., y alegó que el vehículo en controversia, presentaba los siguientes problemas:

---

[5] Íd.

[6] Apéndice del recurso de <u>Certiorari</u>, pág. 135.

> 1)Puerta delantera izquierda, al cerrar
> la misma, choca con el panel de
> instrucciones (dash);
> 2)El guarda lodo izquierdo no es
> simétrico con el guarda lodo derecho.[7]

Solicitó que se le sustituyera el automóvil o, en la alternativa, se resolviera el contrato, se le devolviera la cantidad pagada como pronto pago, y se le concedieran daños.[8]

El 12 de diciembre de 2001, el foro administrativo llevó a cabo una inspección del vehículo, la cual estuvo a cargo del señor Edgar Cotto González, técnico automotriz de la Unidad de Investigaciones de dicha agencia. Estuvieron presentes en la inspección, el querellante, señor Otero Mercado, el técnico automotriz de Toyota de Puerto Rico Corp., señor Luis Iván Rodríguez Ayala, y el técnico automotriz de Triangle Toyota, señor Michael López. El informe de inspección establece que el auto tiene los siguientes defectos:

> 1)El bonete descuadrado; 2)La puerta
> delantera del lado del chofer
> descuadrada; 3)El cristal trasero
> aparenta tener pequeño descuadre.[9]

Además, surge del informe que para esa fecha, el vehículo tenía un millaje de tres mil sesenta y ocho (3,068) millas recorridas.

---

[7] Íd., pág. 21.

[8] Íd., pág. 1.

Luego de celebrada una vista de adjudicación, el D.A.C.O. emitió una Resolución con fecha de 7 de mayo de 2002. Determinó la anulación del contrato de compraventa celebrado entre el señor José Otero Mercado, Triangle Toyota y Toyota Financial Services por vicio en el consentimiento, por dolo y práctica engañosa de parte de la co-querellada, Triangle Toyota[10].

La agencia determinó que Toyota Financial Services, antes Toyota Credit de P.R. Corp., no le debía ningún dinero al señor Otero, ya que él no había realizado pago alguno a la deuda contraída con dicha entidad. A la co-querellada Triangle Toyota, se le ordenó la devolución de los cuatro mil (4,000) dólares recibidos como pronto pago. En cuanto a Toyota de Puerto Rico Corp., distribuidora del vehículo, D.A.C.O. desestimó la reclamación en su contra, por entender que esta entidad "no incurrió en responsabilidad alguna en la transacción de compraventa celebrada entre Otero Mercado y Triangle"[11]. Nada se dispuso respecto a la concesión de daños reclamada por el querellante, ya que no se presentó prueba de daño alguno.

Como parte de sus determinaciones de hechos, la agencia administrativa concluyó lo siguiente:

> Los hallazgos del técnico automotriz del DACO, coinciden con las

---

[9] Íd., pág. 129.

[10] Íd., págs. 26-27.

[11] Íd., pág. 26.

observaciones de la inspección del vehículo objeto de la querella, realizada el 5 de diciembre de 2001, por el señor Guillermo Cabrera, h/n/c Cabrera Auto Collision.

**No se sometió prueba de que el vehículo del señor Otero Mercado hubiera sido impactado y luego reparado después de la transacción de compraventa.**

No se sometió prueba de que el automóvil objeto de la querella estuviera envuelto en algún accidente de tránsito y/o que apareciera envuelto en alguna reclamación al Seguro Obligatorio, o de cualquier otra compañía aseguradora.

Durante la transacción de compraventa no se explicó al señor Otero Mercado, que el vehículo por él adquirido había sido usado como demostración. Tampoco se le informó, que el precio del vehículo se estableció tomando en consideración que el mismo había sido utilizado como demostración.

No se le informó al señor Otero Mercado, ni verbal ni por escrito, que el vehículo objeto de la querella fue impactado y luego reparado.[12] (Énfasis suplido)

Utilizando como fundamento la ausencia de prueba de alguna reclamación al Seguro de Responsabilidad Obligatorio para Vehículos de Motor[13] o a otra aseguradora, de algún accidente de tránsito que inmiscuyera al vehículo vendido al señor Otero Mercado, el D.A.C.O. determinó que tenía que

---

[12] Íd., pág. 22.

[13] Ley número 253 de 27 de diciembre de 1995. 26 L.P.R.A. secs. 8051-8061.

"concluir que dicho vehículo vendido como nuevo, había sido impactado y reparado antes de la compraventa"[14]. Partiendo de la premisa de que Triangle Toyota conocía los desperfectos del vehículo, de que éste había sido impactado y luego reparado y de que en todo momento esta entidad ocultó al señor Otero dicha información, D.A.C.O. concluyó que Triangle Toyota incurrió en dolo, actuación que vició de nulidad el contrato de compraventa. Además señaló, que esta entidad incurrió en práctica engañosa, según definida en el Reglamento de Prácticas y Anuncios Engañosos del Departamento de Asuntos del Consumidor[15] y violó las disposiciones del Reglamento de Garantía de Vehículos de Motor[16] de dicha agencia.

Inconforme, Triangle Toyota presentó ante la agencia, el 28 de mayo de 2002, una moción de reconsideración solicitando la desestimación de la querella. La agencia acogió la solicitud el 3 de junio de 2002 y determinó que la resolvería posteriormente. Pasado el término de noventa (90) días dispuesto por la sección 3.15 de la Ley de Procedimiento Administrativo Uniforme, en adelante

---

[14] Apéndice del recurso de Certiorari, pág. 23.
[15] Reglas 5 y 7 del Reglamento de Prácticas y Anuncios Engañosos, Núm. 6772, Departamento de Asuntos del Consumidor, 20 de febrero de 2004.

[16] Artículo 22.1 del Reglamento de Garantías de Vehículos de Motor, Núm.4797, Departamento de asuntos del Consumidor, 30 de septiembre de 1992.

L.P.A.U.,[17] sin que el D.A.C.O. actuara en cumplimiento de dicho término, Triangle Toyota presentó ante el Tribunal de Apelaciones recurso de revisión administrativa.

Al recurrir al Tribunal de Apelaciones, Triangle Toyota alegó que la agencia en cuestión actuó incorrectamente al no basar sus determinaciones de hechos en la evidencia sustancial que obra en el expediente administrativo. Arguyó que la agencia no apoyó o sostuvo la resolución del contrato de compraventa por alegados vicios y defectos ocultos[18] en el principio de evidencia sustancial. Arguyó además, que la agencia erró al admitir como evidencia prueba de referencia que no estuvo disponible para ser sometida a contrainterrogatorio y que erróneamente, permitió que la querella se enmendara durante la vista administrativa a pesar de las debidas y oportunas objeciones de la parte querellada. Adujo que la agencia administrativa erró al declarar nulos los contratos de compraventa y venta al por menor a plazos por vicio en el consentimiento, provocado por la alegada conducta dolosa y práctica engañosa de Triangle Toyota.[19]

El Tribunal de Apelaciones expidió el auto de revisión solicitado y emitió sentencia el 20 de mayo de 2003, en la cual señaló que los errores planteados por la allí

_____

[17] Ley Número 170 de 12 de agosto de 1988; 3 L.P.R.A. sec. 2165.

[18] Apéndice del recurso de Certiorari, pág. 400.

recurrente, fueron cometidos y revocó la determinación recurrida del caso de autos. El foro intermedio apelativo entendió que de la evidencia que surge del expediente no quedó establecido que la querellada, Triangle Toyota, hubiese incurrido en conducta dolosa ni engañosa al contratar con el querellante. Respecto a la alegación de Triangle Toyota, sobre la indebida enmienda a la querella permitida por la agencia administrativa, el Tribunal de Apelaciones entendió que dicho foro actuó en contravención a la normativa aplicable a las enmiendas para conformar las alegaciones con la prueba. Por tanto, el foro intermedio apelativo le dio entero crédito a la opinión del técnico automotriz de Triangle Toyota, el señor Luis Iván Rodríguez Ayala, en cuanto a que el vehículo era comercialmente aceptable y que los problemas que enfrentaba no eran propiamente defectos. La parte querellante, allí recurrida, le solicitó al foro intermedio apelativo la reconsideración de dicha Sentencia, la cual fue declarada "sin lugar" el 16 de junio de 2003, archivada y notificada a las partes el 19 de junio de 2003.

Inconformes, el señor Otero Mercado, su esposa y la Sociedad Legal de Gananciales compuesta por ambos, acuden ante nos mediante el presente recurso de *Certiorari*. Señalaron como errores cometidos por el foro intermedio apelativo los siguientes:

---

[19] Íd.

**PRIMER ERROR: Erró el Tribunal de Circuito de Apelaciones al revocar la Resolución de DACO, sustituyendo la apreciación de la prueba que realizara la agencia administrativa por la suya propia, descartando la debida deferencia frente a las determinaciones de hecho de la agencia administrativa, concluyendo a partir de dicha apreciación la inexistencia de una conducta dolosa por parte de Triangle Toyota y de la inexistencia del derecho de Otero Mercado a la acción concurrente de saneamiento por vicios ocultos.**

**SEGUNDO ERROR: Erró el Tribunal de Circuito de Apelaciones al revocar la Resolución de DACO, a partir de la exclusión de la evidencia [de] un informe preparado por el Sr. Guillermo Cabrera h/n/c Cabrera Auto Collision, por alegadamente constituir prueba de referencia, cuando el mismo es corroborativo de la prueba pericial presentada por DACO, modificando así la evidencia sustancial que conforma el expediente administrativo.**

**TERCER ERROR: Erró el Tribunal de Circuito de Apelaciones al aplicar mecánicamente la Regla 13.2 de las Reglas de Procedimiento Civil al procedimiento administrativo, al declarar que hubieron [sic] enmiendas a las alegaciones de la querella sobre las oportunas objeciones de Triangle Toyota, cuando de la evidencia sustancial del expediente administrativo se desprende que no hubieron [sic] tales enmiendas.**

II

La sección 4.5 de la Ley de Procedimiento Administrativo Uniforme establece el alcance de la revisión judicial de una decisión administrativa. Se circunscribe a lo siguiente:

> El tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.[20]

Reiteradamente hemos resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son ellas las que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados.[21] Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia.[22] Utilizando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, "si las mismas están sostenidas por evidencia sustancial que surja del expediente

---

[20] 3 L.P.R.A. 2175.

[21] Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar,Inc., 161 D.P.R.____ (2004), 2004 J.T.S. 4; Pacheco Torres v. Estancias de Yauco, 160 D.P.R.___(2003), 2003 J.T.S.150; González Santiago v. Fondo del Seguro del Estado, 118 D.P.R. 11 (1986).

[22] Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar,Inc. supra.

administrativo considerado en su totalidad"[23]. Como hemos definido en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"[24].

Debido a que las determinaciones del foro administrativo tienen que basarse en evidencia sustancial, la parte que las impugne tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial.[25]

> Debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. [26]

Si la parte afectada, en la solicitud de revisión, no demuestra la existencia de esa otra prueba que sostiene que la actuación de la agencia no está basada en evidencia sustancial o que reduzca el valor de la evidencia impugnada, el tribunal respetará las determinaciones de hechos y no

---

[23] _Pacheco Torres v. Estancias de Yauco_, _supra_; _Domínguez Talavera v. Caguas Expressway Motors, Inc._, 148 D.P.R. 387, 397 (1999); _Metropolitana S.E. v. A.R.P.E._, 138 D.P.R. 200, 213 (1995); _Facultad para las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior_, 133 D.P.R. 521, 532 (1993).

[24] _Hilton Hotels v. Junta de Salario Mínimo_, 74 D.P.R. 670, 687 (1953); _Misión Ind. P.R. v. J.P._, 146 D.P.R. 64, 131.

[25] _Misión Ind. P.R. v. J.P._, _supra_.

[26] _Íd_; _Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc._, _supra_.

deberá sustituir el criterio de la agencia por el suyo.[27] Las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas"[28].

Las conclusiones de derecho, tal y como surge de la Ley de Procedimiento Administrativo Uniforme[29], pueden ser revisadas en todos sus aspectos. Sin embargo, esta revisión total no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia.

El tribunal revisor hará una evaluación a la luz de la totalidad del expediente.

> Confrontado con un resultado distinto del obtenido por la agencia, el tribunal debe determinar si la divergencia responde a un ejercicio razonable de la discreción administrativa fundamentado, por ejemplo, en una pericia particular, en consideraciones de política pública o en la apreciación de la prueba que tuvo ante su consideración. El tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una

---

[27] Íd; Ramírez v. Departamento de Salud, 147 D.P.R. 901 (1999). Domínguez Talavera v. Caguas Expressway Motors, Inc, *supra.*

[28] Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987); Facultad para las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior, *supra*, pág. 532 (1993).

[29] Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme, *supra.*

base racional para explicar la decisión administrativa.[30]

Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa, cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial, (2) cuando el organismo administrativo ha errado en la aplicación de la ley, [31] y (3) cuando ha mediado una actuación irrazonable o ilegal.[32] Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. "La cuestión es si la determinación de la agencia es razonable y no si la agencia logró la determinación correcta del hecho o los hechos."[33]

En el primer error planteado ante nos, el peticionario alega que el Tribunal de Apelaciones erró al sustituir la apreciación que hizo el Oficial Examinador del D.A.C.O. de la prueba testifical y documental del expediente en su totalidad, por la suya.[34] Tras hacer una apreciación de toda la prueba presentada ante el foro administrativo y su propio

---

[30] Misión Ind. P.R. v. J.P., *supra*, pág. 134.

[31] Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar,Inc. *supra.*; Reyes Salcedo v. Policía de Puerto Rico, 143 D.P.R. 85 (1997).

[32] T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999).
[33] Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Bogotá, Colombia, 2da. Ed.,2001, pág. 543.

[34] Recurso de Certiorari, pág. 12.

examen de los hechos, determinó que no hubo dolo alguno de parte de la recurrida. Después de hacer mención del derecho aplicable al dolo contractual, el foro intermedio apelativo entendió que el querellante no presentó prueba lo suficientemente sólida como para sostener dicha contención.[35] De igual modo, respecto a los vicios ocultos[36], después de discutir el derecho aplicable a esta acción, el Tribunal de Apelaciones concluyó lo siguiente:

> [...]Triangle Toyota no está obligada al saneamiento. Al comprar el vehículo, el recurrido conocía los defectos de la puerta, los cuales según el testimonio de los peritos que testificaron durante la vista no eran propiamente defectos que afectaran el vehículo sino que se trataba de una situación que era comercialmente aceptable. En cuanto a los otros "problemas" del vehículo no podemos decir que éstos mermen notablemente el valor del mismo.[37]

Concluimos que el Tribunal de Apelaciones incurrió en el error señalado por el señor Otero Mercado. Extralimitó su revisión judicial y no le prestó la debida y merecida deferencia al foro administrativo. No actuó conforme a la norma establecida para la revisión judicial. No limitó su intervención a evaluar si la agencia sostuvo su decisión en el principio rector de evidencia sustancial, o si actuó de

---

[35] Apéndice del recurso de <u>Certiorari</u>, pág. 407.

[36] Entendemos que no debemos entrar a dilucidar si se dieron los requisitos de vicios ocultos, pues D.A.C.O. hizo su determinación de declarar nulos e inexistentes los contratos entre las partes por vicio en el consentimiento provocado por la conducta dolosa de Triangle Toyota.

forma ilegal o arbitraria. Expone cuáles son los criterios de la revisión judicial sobre decisiones administrativas y cuáles son los parámetros establecidos por este Tribunal. No obstante, descartó y sustituyó las determinaciones de hechos y conclusiones de derecho formuladas por D.A.C.O., agencia encargada de resolver la controversia de marras. Tal como mencionamos anteriormente, las conclusiones de derecho son revisables en todos sus aspectos, pero también indicamos que esto no implica que no merezcan deferencia, más aún cuando la agencia es la experta y conocedora de la materia especializada en cuestión.

El querellante de autos presentó su prueba y a la misma se le impartió la credibilidad que la agencia consideró apropiada y procedente. Nos encontramos ante prueba conflictiva, que plantea una controversia de credibilidad. Ambas partes en la vista ante la agencia, tuvieron la oportunidad de presentar argumentos a favor y en contra de esa prueba y de esta forma colocaron al foro administrativo en posición de hacer las determinaciones apropiadas para decidir si era procedente o no la resolución del contrato.

En el caso J.R.T v. Línea Suprema, Inc.[38] y luego en Junta de Relaciones del Trabajo de Puerto Rico v. Escuela

---

[37] Apéndice del recurso de Certiorari, págs. 412-413.
[38] 89 D.P.R. 840, 849 (1964).

Cooperativa Eugenio María de Hostos [39], reiteramos, sobre la apreciación de prueba conflictiva, lo siguiente:

> Aunque estamos conscientes que existe prueba conflictiva de la cual podamos [sic] inferir conclusiones distintas a las de la Junta, sin embargo, ésa es misión que no nos pertenece. La determinación en cuanto a testimonio conflictivo [...] y la deducción de inferencias de hechos establecidos en la vista caen dentro de la competencia de la Junta y no debemos pasar sobre la credibilidad de testigos o repesar la evidencia. Nuestra función es tomar el récord en su totalidad y poner en vigor la orden si encontramos evidencia sustancial para sostener las conclusiones de la Junta.

Debe respetarse el dictamen de un foro administrativo en cuanto a la credibilidad de los testigos. En autos, vimos que existen documentos que se contradicen[40] en cuanto a la calidad del vehículo, si es nuevo o usado. La aquí recurrida alega que sí se informó al peticionario sobre el hecho de que el vehículo había sido utilizado como unidad de demostración y que fue ésta la razón por la cual se le redujo el precio de venta. La prueba presentada ante la agencia sobre esta alegación, se reduce al testimonio del señor Michael López, Gerente de Servicio al Cliente de Triangle Toyota. Sin embargo, el peticionario presentó prueba contraria, aduciendo que adquirió el vehículo bajo la

---

[39] 107 D.P.R. 151, 156-157 (1978).

[40] Nos referimos a los documentos firmados por el señor Otero al momento de la compraventa, los cuales mencionados en la relación de hechos. En la solicitud de crédito, el vehículo se registra como "DEMO", o sea usado como

creencia de que era nuevo. El D.A.C.O. aquilató la prueba presentada ante sí, tanto documental como testifical, y entendió que el querellante, aquí peticionario, tenía derecho al remedio de resolver el contrato de compraventa por haber mediado dolo contractual de parte de Triangle Toyota. La agencia tuvo ante sí la evidencia para determinar razonablemente si el peticionario conocía o no que el vehículo en controversia era usado. Esta determinación, como cuestión de apreciación y credibilidad de la prueba, merece deferencia por parte de los tribunales.

Si bien es cierto que la prueba presentada puede llevar a varias determinaciones razonables, es la agencia la que determinará la adecuada y no el Tribunal de Apelaciones. Si no fuese de esta forma las agencias administrativas perderían su razón de ser.

II

Procedemos a discutir el segundo error señalado por el peticionario, el cual nos plantea el asunto de la aplicación de las Reglas de Evidencia en los procesos administrativos. La sección 3.13, incisos (c) y (e), de la Ley de Procedimiento Administrativo Uniforme establece lo siguiente:

> (c) El funcionario que presida la vista podrá excluir aquella evidencia que sea impertinente, inmaterial, repetitiva o

demostración y en el contrato y la orden de compra aparece marcado como "nuevo".

inadmisible por fundamentos constitucionales o legales basados en privilegios evidenciarios reconocidos por los tribunales de Puerto Rico.

[...]

(e) Las Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento. [41]

En todo proceso adjudicativo, el propósito fundamental es la búsqueda de la verdad y la justicia. "Las reglas procesales y en particular las de evidencia, persiguen viabilizar este propósito; no obstaculizarlo."[42] La no-aplicación de las Reglas de Evidencia a los procesos administrativos persigue "evitar las trabas procesales de los tribunales de justicia"[43] y propiciar que éstos sean de carácter ágil y sencillo. El hecho de que los procesos administrativos sean ágiles y sencillos persigue, además de cumplir con el fin de una "solución rápida, justa y económica del procedimiento"[44], que las personas legas participen y le den un uso eficiente a tales procesos.

El carácter informal y flexible, que distingue a los procesos administrativos, permite que el juzgador de hechos

---

[41] Sec. 3.13 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. 2163.

[42] Junta de Relaciones del Trabajo de Puerto Rico v. Autoridad de Comunicaciones de Puerto Rico, 110 D.P.R. 879, 884 (1981).

[43] Martínez v. Tribunal Superior, 83 D.P.R. 717, 720 (1961).

conozca toda la información pertinente para dilucidar la controversia que tiene ante sí. No obstante, los principios fundamentales de las reglas procesales y de evidencia podrán utilizarse en estos procesos mientras no sean incompatibles con la naturaleza de los mismos.[45]

El Tribunal Supremo de los Estados Unidos se ha expresado sobre la evaluación que debe recibir la prueba de referencia dentro del principio rector de evidencia sustancial, necesario para sostener decisiones administrativas. En Richardson v. Perales[46] expresó lo siguiente:

> Una agencia puede descansar su decisión sólo en prueba de referencia, aún cuando ésta sea contradicha por prueba, si la prueba de referencia es del tipo que un hombre prudente y razonable descansa en ella para llevar a cabo sus negocios.[47]

El peticionario arguye que el Tribunal de Apelaciones erró al excluir el informe preparado por el señor Guillermo Cabrera por ser alegadamente prueba de referencia. Sostiene que este informe impugnado, realmente constituye prueba corroborativa de la prueba pericial presentada por el D.A.C.O. Aduce, además, que la prueba testifical, ofrecida

---

[44] Sec. 3.13 de la Ley de Procedimiento Administrativo Uniforme, *supra.*

[45] Oficina de Ética Gubernamental v Rodríguez, 159 D.P.R.__ (2003), 2003 J.T.S. 51.

[46] 402 U.S. 389 (1971).

[47] Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, *supra*, pág.555.

por el señor Otero Mercado corroboró lo que indicaba el documento en controversia, los desperfectos que tenía el vehículo.[48]

El Tribunal de Apelaciones entendió "que admitir esta prueba de referencia no abonaría a la consecución de la justicia", ya que aunque sí es admisible como prueba de las gestiones realizadas por el recurrido para conocer la magnitud de los defectos del vehículo, el mismo no puede ser utilizado para demostrar que el vehículo en cuestión había sido impactado.[49]

El foro administrativo admitió el informe en cuestión y como parte de sus determinaciones de hechos estableció que los hallazgos del técnico automotriz del D.A.C.O. coinciden con las observaciones hechas por el señor Cabrera.[50] Si bien es cierto que este informe en controversia es prueba de referencia, en los procesos administrativos no aplican las Reglas de Evidencia, por lo que sí podía admitirse. Además, según surge de los hechos, la agencia no basó su decisión únicamente en tal informe, existía otra prueba documental y testifical que sostuvo su decisión. En la vista evidenciaria, el Examinador determinó en cuanto al referido documento:

_____

[48] Petición de Certiorari, pág. 7.

[49] Apéndice del recurso de Certiorari, pág. 406.

[50] Íd., pág. 22. Ver determinación de hecho número 9 de la Resolución del Departamento de Asuntos del Consumidor.

> Lo admitimos pero no aceptamos el "expertise" pero sí tenemos que tomar conocimiento que repite lo mismo que dice el técnico del DACO.

Este informe corroboró los desperfectos que el técnico de la agencia le encontró al vehículo. La determinación de que el vehículo había sido impactado antes de la compraventa, es una inferencia razonable de los hechos básicos que surgen de la totalidad de la prueba presentada ante la agencia, la cual merece deferencia de parte del tribunal revisor. Por lo tanto, erró el Tribunal de Apelaciones al revocar la Resolución emitida por la agencia recurrida.

III

El tercer error señalado nos plantea la aplicación de las Reglas de Procedimiento Civil en los procesos administrativos. Tal como hemos establecido en casos anteriores, este asunto es objeto de un examen similar sobre la aplicación de las Reglas de Evidencia a tales procedimientos. La regla general es que las Reglas de Procedimiento Civil no aplican en los procesos administrativos.[51] La jurisprudencia ha establecido que al igual que las Reglas de Evidencia tal cuerpo normativo procesal podrá utilizarse en procesos administrativos para guiar el curso de los mismos mientras no obstaculicen la flexibilidad, agilidad y sencillez de éstos.[52] Es

---

[51] Martínez v. Tribunal Superior, *supra*.

[52] Pérez Vélez v. VHP Motors Corp. 152 D.P.R.____(2000), 2000 J.T.S. 177.

fundamental que su utilización en dichos procesos propicie una solución justa, rápida y económica.

El Tribunal de Apelaciones entendió que la actuación de la agencia de permitir las alegadas enmiendas a la querella, le violentó a la querellada Triangle Toyota su derecho a una notificación oportuna de los cargos o querellas en su contra[53], y así su derecho a un debido proceso de ley[54].

El peticionario arguye que erró el Tribunal de Apelaciones al aplicar mecánicamente la Regla 13.2 de Procedimiento Civil[55] al proceso administrativo en cuestión, al declarar que hubo enmiendas a las alegaciones de la querella, a pesar de las oportunas objeciones de la querellada, cuando no se desprende del expediente que hubo tales enmiendas. Alega, que el foro apelativo intermedio tenía que aplicar la Regla 16.2 del Reglamento de Procedimientos Adjudicativos del Departamento de Asuntos del Consumidor[56] en vez de aplicar la Regla 13.2 de Procedimiento Civil[57]. La Regla 16.2 de dicho cuerpo normativo procesal dispone lo siguiente:

---

[53] Derecho garantizado en la Sección 3.1 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. 2151.

[54] Derecho garantizado bajo el Artículo II, sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico.

[55] 32 L.P.R.A. Ap. III R. 13.2.

[56] Reglamento de Procedimientos Adjudicativos, Núm. 6219, Departamento de Asuntos del Consumidor, 18 de octubre de 2002.

[57] La Regla 13.2 de Procedimiento Civil dispone lo siguiente:

> La querella podrá entenderse enmendada durante la vista administrativa para ajustarla a la prueba presentada; excepto en casos celebrados en rebeldía.

En su argumentación, el peticionario parte de la premisa de que no hubo tales enmiendas, ya que en la querella, la cual fue redactada por el propio querellante, claramente se identifica el problema del vehículo de motor y el remedio solicitado. Surge de la querella y de la Resolución del D.A.C.O. que el remedio solicitado por el querellante fue que se le sustituyera el automóvil o, en la

---

> Cuando con el consentimiento expreso o implícito de las partes se sometan a juicio cuestiones no suscitadas en las alegaciones, aquéllas se considerarán a todos los efectos como si se hubieran suscitado en las alegaciones. La enmienda de las alegaciones que fuere necesaria para conformarlas a la evidencia a los efectos de que las alegaciones reflejen las cuestiones suscitadas, podrá hacerse a moción de cualquiera de las partes en cualquier momento, aun después de dictarse sentencia; pero la omisión de enmendar no afectará el resultado del juicio en relación con tales cuestiones. Si se objetare la evidencia en el juicio por el fundamento de ser ajena a las cuestiones suscitadas en las alegaciones, el tribunal podrá permitir las enmiendas y deberá hacerlo liberalmente, siempre que con ello se facilite la presentación del caso y la parte que se oponga no demuestre a satisfacción del tribunal que la admisión de tal prueba perjudicaría su reclamación o defensa. El tribunal podrá conceder una suspensión para permitir a la parte opositora controvertir dicha prueba. En todo caso en que hubiere alguna parte en rebeldía por falta de comparecencia se estará a lo dispuesto en las Reglas 43.6 y 67.1.

alternativa, se determinara la resolución del contrato y se le devolviera el pronto pago.[58] Arguye, además, que no hubo enmiendas a las alegaciones como tal sino una especificación de las originales, lo cual se encuentra dentro de los parámetros que establece la Regla 16.2 del Reglamento de Procedimientos Adjudicativos, antes citado.

En la querella no se tienen que precisar todos los detalles de la acción, sino bosquejar la controversia y las reclamaciones.[59] Surge de la querella que el peticionario solicitaba como alternativa la resolución del contrato de compraventa, por lo cual, la querellada conocía la posibilidad de que se concediera al querellante dicho remedio y por ende de la devolución de las prestaciones[60].

No podemos perder de perspectiva que estamos ante un proceso administrativo, que amerita flexibilidad y rapidez para aportar a la economía procesal, por lo tanto, las Reglas de Procedimiento Civil se deben aplicar en consecución de este fin y no con el de impartirle a este proceso carácter de un juicio ante el Tribunal de Primera Instancia. No actuó correctamente el Tribunal de Apelaciones al aplicar mecánicamente la Regla 13.2 de Procedimiento Civil, *supra*. Entendemos que las alegadas enmiendas permitidas durante la vista administrativa no privaron a la

---

[58] Apéndice del recurso de Certiorari, págs. 1 y 20.

[59] Banco Central v. Capitol Center, 135 D.P.R. 760 (1994).

recurrida Triangle Toyota de su debido proceso de ley. La agencia actuó conforme a los parámetros establecidos en la Regla 16.2 del Reglamento de Procedimientos Adjudicativos, *supra*; permitió que la querella se enmendara para conformarla con la prueba presentada durante la vista administrativa, y así especificar las reclamaciones originales. Las enmiendas permitidas no eran totalmente ajenas a la reclamación que se desprende de la querella original. Concluimos que el Tribunal de Apelaciones incurrió en el tercer error señalado por el peticionario.

Concluimos que la decisión emitida por el D.A.C.O. está sostenida por la evidencia sustancial que consta del expediente administrativo.


IV

Por los fundamentos antes expuestos, revocamos la sentencia recurrida, emitida por el Tribunal de Apelaciones, y reinstalamos la Resolución dictada por el Departamento de Asuntos del Consumidor.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

---

[60] Véase Artículo 1247 del Código Civil. 31 L.P.R.A. sec. 3496.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José L. Otero Mercado, et al

      Peticionario

        v.

Toyota de Puerto Rico Corp, et        CC-2003-567
al

      Recurrido

SENTENCIA

San Juan, Puerto Rico, a 3 de febrero de 2005.

    Por los fundamentos antes expuestos, revocamos la sentencia recurrida, emitida por el Tribunal de Apelaciones, y reinstalamos la Resolución dictada por el Departamento de Asuntos del Consumidor.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.

                Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo