Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| IVÁN AYALA HERNÁNDEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | KLRA202400418 | *Revisión* procedente de la Administración de Corrección y Rehabilitación<br><br>Caso Núm.:<br>12,617-24<br><br>Sobre:<br>Reclasificación de custodia |
|---|---|---|

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de septiembre de 2024.

Comparece Iván Ayala Hernández (en adelante, recurrente) mediante un *Recurso de Revisión Judicial* para solicitarnos la revisión de la *Resolución,* emitida y notificada el 31 de mayo de 2024, por el Departamento de Corrección y Rehabilitación (en adelante, DCR).[1] Mediante la *Resolución* recurrida, el DCR ratificó la clasificación de custodia mediana al aquí recurrente. Sobre dicha *Resolución,* el recurrente presentó una oportuna solicitud de reconsideración.[2] Atendida la solicitud de reconsideración, mediante determinación del 17 de junio de 2024, notificada al recurrente el 26 de junio de 2024, el DCR dispuso no acoger la solicitud instada.[3]

Por los fundamentos que expondremos, se *confirma* la *Resolución* recurrida.

---

[1] Apéndice del recurso, en la *Resolución del comité de clasificación y tratamiento.*
[2] *Íd.,* en el *Escrito de reconsideración.*
[3] *Íd.,* en el documento intitulado *Proceso de reconsideración sobre apelación de clasificación.*

Número Identificador

SEN2024_____

I

Conforme se desprende de los autos ante nuestra consideración, actualmente, y desde el 15 de enero de 2004, el recurrente se encuentra extinguiendo una sentencia de noventa y nueve (99) años por asesinato en primer grado, aunque previamente, se encontraba extinguiendo las penas por otros delitos sobre los cuales también fue sentenciado. Se desprende, además, que el término total de la sentencia a cumplir es uno de ciento veinte (120) años, que el mínimo de su sentencia está para el 8 de octubre de 2023, y el máximo se encuentra tentativamente para el 8 de octubre de 2101.[4]

Durante el tiempo de reclusión, al recurrente se le ha modificado su custodia en más de una ocasión. Además, durante este tiempo, también fue sentenciado por el Tribunal Federal de Distrito de Puerto Rico, donde se le impuso una pena de doscientos treinta y cinco (235) meses, cinco (5) años de supervisión y $100.00 dólares de gravamen.[5] Posterior a este reingreso, también se le ha modificado su custodia en más de una ocasión.

Según se desprende, allá para marzo de 2019, el recurrente reingresó a la institución correccional estatal proveniente de la Cárcel Federal MDC con un documento de *Detainer federal*.

De ahí, el Comité de Reclasificación y Tratamiento (Comité) realizó la evaluación más reciente en cuanto a la custodia del aquí recurrente, la cual se esgrime en la *Resolución* que nos ocupa.[6] Mediante su dictamen, emitido y notificado el 31 de mayo de 2024, ratificó la clasificación de custodia mediana.[7] Como parte de las

---

[4] Apéndice del recurso, en la *Resolución del comité de clasificación y tratamiento.*
[5] *Íd.* La referida *Sentencia* se le aplicó por infringir el Código 3599 del Racketeer Influenced and Corrupt Organization Act (Ley Contra el Crimen Organizado), 18 USC secs. 1961-1968.
[6] Escrito en cumplimiento de orden, presentado por el DCR el 9 de septiembre de 2024, a la pág. 4; Expediente Administrativo 12,617-24, en el *Acuerdo del Comité de Clasificación y Tratamiento.*
[7] Apéndice del recurso, en la *Resolución del Comité de Clasificación y Tratamiento.*

conclusiones que surgen de la *Resolución*, el Comité expresó que el recurrente tiene un *Detainer federal*. Además, esbozó que la escala de reclasificación de custodia arrojó puntuación para que el recurrente continuara en custodia mediana, beneficiándose al máximo de los Programas y Tratamientos ofrecidos en su custodia actual. Sobre dicha *Resolución*, el recurrente presentó una oportuna solicitud de reconsideración.[8] Esencialmente, sostuvo que la Orden Administrativa AC-2008-01, del 20 de mayo de 2008, dispone que el *Detainer* no puede utilizarse para restringir los cambios de niveles de custodia. Atendida la solicitud de reconsideración, mediante determinación del 17 de junio de 2024, notificada al recurrente el 26 de junio de 2024, el DCR dispuso no acoger la solicitud instada.[9] Indicó que la referida Orden Administrativa estaba relacionada a órdenes de detención por inmigración y naturalización, por lo que no era de aplicabilidad a la presente acción.

Insatisfecho, el 31 de julio de 2024, el recurrente envió para su radicación, mediante por correo regular, un recurso de revisión suscrito el 22 de julio de 2024, para su radicación ante esta Curia. Dicho recurso fue radicado el 1 de agosto de 2024. Junto al recurso instado, el recurrente presentó, además, una *Solicitud y Declaración para que se exima de pago de arancel por razón de indigencia*, la cual autorizamos.

Aun cuando propiamente no se desprende un señalamiento de error, el recurso versa sobre la inconformidad del recurrente con el dictamen emitido por el DCR, mediante el cual dispuso ratificar la custodia mediana, cuando este entiende que debió reclasificarse a una custodia mínima.

---

[8] Apéndice del recurso, en el documento intitulado *Proceso de reconsideración sobre apelación de clasificación.*
[9] *Íd.*

El 27 de agosto de 2024, el DCR, por conducto la Oficina del Procurador General presentó copia certificada del expediente administrativo relacionado a este caso. Por otro lado, el 9 de septiembre de 2024, compareció la Oficina del Procurador General mediante *Escrito en cumplimiento de orden.*

Con el beneficio de la comparecencia de ambas partes procederemos a exponer el derecho aplicable.

II

**A. Revisión Judicial**

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[10] El artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[11] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[12] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable.[13] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[14] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones

---

[10] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[11] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[12] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.
[13] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).
[14] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).

de derecho.[15] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[16]

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[17] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias, siempre que surja del expediente administrativo evidencia sustancial que las sustente.[18] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[19] La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[20] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[21] Ello implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[22] Además, la norma de prueba sustancial se sostiene en la premisa de que son

---

[15] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA*, 149 DPR 263, 279-280 (1999).
[16] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24, 34 (1996).
[17] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[18] *Íd.*
[19] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[20] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota*, 163 DPR 716, 728 (2005).
[21] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).
[22] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).

las agencias las que producen y determinan los hechos en los procesos administrativos y no los tribunales.[23]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[24] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[25] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo.[26] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[27] En esta tarea, los tribunales están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[28] Así pues, si el fundamentos de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable en toda su extensión.[29]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales

---

[23] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.
[24] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[25] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[26] *Otero v. Toyota*, supra, a la pág. 728.
[27] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[28] *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[29] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).

revisores tienen la libertad absoluta para descartarlas libremente.[30] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[31]

Ahora bien, esta deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[32]

### B. Manual para la Clasificación de los Confinados

La Constitución del Estado Libre Asociado de Puerto Rico establece como política pública:

> . . . reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social.[33]

En mérito de lo anterior, se ha establecido la clasificación de confinados como un método para la administración eficiente y eficaz del sistema correccional, delegado al Departamento de Corrección.[34] La aludida clasificación consiste en una separación sistemática en subgrupos, en virtud de las necesidades del confinado, desde la fecha de su fecha ingreso hasta su excarcelación.[35] Existen tres (3) niveles de custodia, los cuales se basan en el grado de supervisión que requiere el confinado, estos son: (i) máxima, en la cual se

---

[30] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).
[31] *Cruz v. Administración*, 164 DPR 341, 357 (2005).
[32] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. A.R.Pe.*, supra.
[33] Artículo VI sec. 19.
[34] Introducción del Manual para la Clasificación de los Confinados, Reglamento Núm. 9151 del 22 de enero de 2020; *Rivera Torres v. Universidad de Puerto Rico*, 209 DPR 489, 499 (2022)
[35] Introducción del Reglamento Núm. 9151, *supra.*

colocan a los confinados que requieren un grado alto de control; (ii) mediana, en la cual se encuentran los confinados que requieren un grado intermedio de supervisión, y (iii) mínima, en la cual los confinados son elegibles para habitar en viviendas de menor seguridad y pueden trabajar fuera del perímetro con un mínimo de supervisión.[36] El nivel de custodia se determinará tomando en cuenta los siguientes factores: "severidad del delito, su historial de delitos anteriores, su comportamiento en instituciones, los requisitos de seguridad y supervisión, y las necesidades de programas y servicios en específico".[37] A su vez, nuestro Tribunal Supremo enfatizó que la determinación, en cuanto al nivel de custodia, requiere que se realice un balance de intereses adecuado. Ello, puesto que, por un lado, se encuentra el interés público de rehabilitar al confinado y de mantener la seguridad institucional y de la población penal; mientras que, por otro lado, se encuentra el interés propio del confinado de permanecer en determinado nivel de custodia.[38]

Luego de que el Departamento de Corrección clasifique de manera inicial a un confinado, tendrá el deber de hacer una revisión periódica en lo que respecta su nivel de custodia.[39] La custodia de aquellos confinados que se encuentran en mínima y mediana deberá ser revisadas de cada doce (12) meses; mientras que, los que se encuentran en máxima, y que cumplieron su primer año en esa clasificación, se les deberá revisar su custodia de cada seis (6) meses.[40] Ahora bien, la revaluación de custodia no necesariamente tiene como resultado el cambio de custodia. Su propósito es evaluar la adaptación del confiando y considerar las situaciones que puedan

---

[36] Sec. 1 del Reglamento Núm. 9151, *supra.*
[37] *Íd.*
[38] *Ibarra Gonzalez v. Depato. Corrección*, 194 DPR 29, 44 (2015), citando a *Cruz v. Administración*, supra, a la pág. 352.
[39] Sec. 1 del Reglamento Núm. 9151, *supra.*
[40] Sec. 7 (III) (B) (1) (a) y (b) del Reglamento Núm. 9151, *supra.*

acaecer.[41] La reclasificación de custodia se llevará a cabo por un Técnico Sociopenal quien llenará el formulario de Reclasificación de Custodia, el cual contiene una Escala de Reclasificación.[42] Así, pues la determinación de reclasificar a un confinado será el resultado de:

> (1) la puntuación en la evaluación de custodia; (2) las consideraciones especiales de manejo; (3) las modificaciones no discrecionales; (4) las modificaciones discrecionales para un nivel de custodia más alto, y (5) las modificaciones discrecionales para un nivel de custodia más bajo.[43]

Entre las modificaciones no discrecionales se encuentra la Orden de Deportación por Casos o Sentencias Pendientes de Cumplir. El Manual de Clasificación de Confinados define la referida orden como una ". . .expedida contra un confinado, la cual informa a las autoridades que tienen al confinado en su custodia, que otra jurisdicción tiene la intención de asumir la custodia del confinado cuando éste sea puesto en libertad". Los confinados a los cuales se les haya expido la referida orden, deben ser colocados en seguridad mediana.[44]

Por otra parte, entre las modificaciones discrecionales, se encuentra cuando la puntuación subestima la gravedad del delito. Es decir, "[l]os confinados cuyas circunstancias del delito y sus consecuencias hayan creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad pública y la comunidad se siente amenazada con su presencia".[45] Asimismo, es una modificación discrecional la afiliación prominente con gangas. Ello es cuando:

> [s]e tiene conocimiento de que el confinado es uno de los principales dirigentes de un grupo que ocasiona problemas de manejo y que utiliza la violencia para lograr sus objetivos dentro de un escenario correccional o en la comunidad y además se considera que esta

---

[41] Sec. 7 (II) del Reglamento Núm. 9151, *supra*; *Rivera Torres v. Universidad de Puerto Rico*, supra, a la pág. 501.
[42] *Rivera Torres v. Universidad de Puerto Rico*, supra, a la pág. 501. Véase, Apéndice K del Reglamento 9151, *supra*.
[43] *Rivera Torres v. Universidad de Puerto Rico*, supra, a la pág. 501
[44] Sec. III (C) del Apéndice K del Reglamento Núm. 9151, *supra*.
[45] *Íd.,* Sec. III (D).

afiliación es un problema de manejo en la institución.
Se deben identificar a esos individuos como miembros
principales de grupos.[46]

Es necesario que toda modificación discrecional se base en documentación escrita, esta puede ser: "reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social y cualquier otra información o documento que evidencie ajustes o comportamiento del confinado contrario a las normas y seguridad".[47]

Por último, cabe resaltar que el Departamento de Corrección merece particular deferencia en cuanto al proceso de clasificación de confinados. Por consiguiente, si una determinación de clasificación de custodia es razonable y cumple con el procedimiento de las reglas y manuales, sin alterar los términos de la sentencia impuesta, debe confirmarse.[48]

III

En presente caso, el recurrente comparece ante nos para expresar su inconformidad con una *Resolución* del Comité, en la cual se dispuso que debía permanecer en custodia mediana. Este afirma que, en virtud de la Orden administrativa AC-2008-01, el DCR debió clasificarlo en custodia mínima.

Como bien le explicó el DCR al recurrente, la aludida Orden administrativa aplica únicamente a los confinados a los cuales se les haya expedido un *Detainer* por el Servicio de Inmigración y Naturalización de los Estados Unidos.[49] Es claro que lo anterior no fue lo que ocurrió en el caso de marras. La disposición legal que aplica a las circunstancias particulares del recurrente es la Sección III (C) del Apéndice K del Reglamento Núm. 9151. Ello, puesto que, mientras se encontraba custodiado por el Estado, se le impuso un

---

[46] Sec. III (E) del Apéndice K del Reglamento Núm. 9151, *supra.*
[47] *Íd.,* Sec. III (D).
[48] *Rivera Torres v. Universidad de Puerto Rico,* supra, a las págs. 503-404; *Cruz v. Administración,* supra, a la pág. 355.
[49] Sec. IV (1) de la Orden administrativa AC-2008-01.

*Detainer federal* producto de una sentencia que le aplicó el Tribunal Federal por infringir la Ley Contra el Crimen Organizado. La mencionada sección del Reglamento Núm. 9151, establece que, cuando un confinado tiene una Orden de Deportación por Casos o Sentencias Pendientes de Cumplir impuesta sobre él, su nivel de custodia **no puede ser menor de mediana**. Esta modificación de sentencia no es discrecional. Por consiguiente, coincidimos en que la determinación del DCR de mantener al peticionario en custodia mediana fue una correcta en derecho.

Según reseñamos, si la parte afectada no demuestra la existencia de prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial, este Tribunal debe respetar la determinación de la agencia y no sustituir su criterio.[50] Igualmente, resaltamos que el DCR merece particular deferencia en cuanto al proceso de clasificación de confinados. De manera que, si una determinación de clasificación de custodia es razonable y afín con las reglas y manuales, debe confirmarse.[51]

En merito de todo lo anterior, colegimos que el error planteado no se cometió, *ergo*, la determinación del DCR debe sostenerse.

IV

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[50] *Otero v. Toyota*, supra, a la pág. 728.
[51] *Rivera Torres v. Universidad de Puerto Rico*, supra, a las págs. 503-404; *Cruz v. Administración,* supra, a la pág. 355.