Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| JESÚS AGUIAR OLIVO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202300535 | *Revisión* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm. B-449-23<br><br>Sobre:<br>Revisión Administrativa |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de noviembre de 2023.

I.

El 14 de febrero de 2012, Jesús Aguiar Olivo fue sentenciado a cumplir dos (2) términos concurrentes de noventa y nueve (99) años por violaciones a los Artículos 93(B) y 106(B) del derogado Código Penal de Puerto Rico del 2012 y un término consecutivo de un (1) año y dos (2) días por cometer el delito codificado en el Artículo 5.05 de la derogada Ley de Armas de Puerto Rico del 2000. La sentencia total impuesta fue de un total de ciento cinco (105) años y siete (7) días.

El 17 de marzo de 2023, recibida por la Agencia el 24 de marzo de 2023, Aguiar Olivo radicó una *Solicitud de Remedio Administrativo* ante el Departamento de Corrección y Rehabilitación (DCR). Solicitó la aplicación de la Ley Núm. 85-2022, según enmendada, la cual reduce el término mínimo para solicitar ser evaluado por la Junta de Libertad Bajo Palabra.

En respuesta emitida el 7 de julio de 2023 por la División de Remedios Administrativos, se le indicó que, tras aplicarse la Ley Núm. 85-2022 a la liquidación de sentencia, bajo el cómputo

máximo cualificaría para libertad bajo palabra el 27 de noviembre de 2117 y bajo el cómputo mínimo sería el 11 de marzo de 2041. Inconforme, el 31 de julio de 2023, Aguiar Olivo presentó *Solicitud de Reconsideración.* Planteó que, según la Ley Núm. 85-2022, los convictos por asesinato en primer grado podrían ser considerado por la Junta de Libertad Bajo Palabra al cumplir veinte y cinco (25) años del término al que hayan sido sentenciados.

Mediante *Respuesta de Reconsideración al Miembro de la Población Correccional* de 31 de agosto de 2023, recibida por Aguiar Olivo el 28 de septiembre de 2023, la División denegó la solicitud. En ella, sin embargo, modificó la respuesta previamente emitida y anejó un documento titulado, *Carta Circular Núm. 2023-02* del 15 de junio de 2023. Dicha misiva establecía el procedimiento a seguir para el cumplimiento de la Ley Núm. 85-2022.

Aun en desacuerdo con la determinación, Aguilar Olivo presentó ante nos *Solicitud de Revisión Administrativa.*[1] Señala:

> ERRÓ EL DCR POR MEDIO DE SU SECRETARIA AL ORDENAR LA SEPARACIÓN DE PENAS Y DAR POR COMPUTADAS LAS PENAS MENORES DE LAS SENTENCIAS IMPUESTAS CONSECUTIVAMENTE ESTO EN CONTRAVENCIÓN DE LO DISPUESTO EN LA LEY 85-2022 Y CONTRARIO A LA VOLUNTAD E INTENCIÓN LEGISLATIVA EN LA LEGISLACIÓN DE LA MISMA LEY 85-2022.

El 31 de octubre de 2023, le concedimos al DCR, a través de la Oficina del Procurador General de Puerto Rico, plazo de diez (10) días para expresarse con relación al recurso. El 10 de noviembre de 2023, a través del Procurador General, el DCR nos solicitó que devolviéramos el caso a la Agencia para evaluarlo a la luz de la nueva *Carta Circular Núm. 2023-02* del 11 de octubre de 2023. Explicó que, en la aludida *Carta* se decretaron nuevas instrucciones sobre la aplicación de las disposiciones de la Ley Núm. 85-2022.

---

[1] La misma fue recibida por la Secretaría del Tribunal de Apelaciones el 18 de octubre de 2023.

II.

A.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Núm. 38-2017, según enmendada,[2] establece nuestra facultad revisora sobre las decisiones emitidas por los organismos administrativos. Esta revisión judicial tiene como propósito limitar la discreción de las agencias y asegurarse de que desempeñen sus funciones conforme a la ley y de forma razonable.[3] En esta dinámica, las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que las conclusiones e interpretaciones de los organismos administrativos especializados, merecen gran deferencia.[4]

El estándar de revisión de una decisión administrativa se circunscribe a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus acciones un abuso de discreción.[5] Al desempeñar esta función revisora, estamos obligados a considerar la especialización y experiencia de la agencia, diferenciando entre las cuestiones de interpretación estatutaria, área de especialidad de los tribunales, y las cuestiones propias de la discreción o pericia administrativa.[6]

En tal sentido, estamos facultados a determinar: (1) que el remedio concedido por la agencia fue el apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y (3) determinar si las conclusiones de derecho fueron correctas mediante su revisión completa y

---

[2] 3 LPRA § 9601 *et seq.*
[3] *Ifco Recycling* v. *De Desperdicios Sólidos*, 184 DPR 712, 743 (2012).
[4] *Capó Cruz* v. *Junta de Planificación*, 204 DPR 581, 591 (2020); *Torres Rivera* v. *Pol. de Puerto Rico*, 196 DPR 606, 626 (2016); *Batista, Nobbe* v. *JTA. Directores*, 185 DPR 206, 212 (2012); *Ifco Recycling*, 184 DPR, pág. 744.
[5] *Capó*, 204 DPR, pág. 592; *Torres*, 196 DPR, pág. 626; *Ifco Recycling*, 184 DPR, pág. 745, citando a *Empresas Ferrer* v. *ARPE*, 172 DPR 254, 264 (2007).
[6] *Ifco Recycling*, 84 DPR, pág. 744; *Maranello et al.* v. *OAT*, 186 DPR 780, 792 (2012).

absoluta.[7] Sostendremos las determinaciones de hecho, en tanto y en cuanto obre evidencia suficiente en el expediente de la agencia para sustentarla.[8] En cuanto a las determinaciones de Derecho, tenemos amplia facultad para desplegar nuestra función revisora, pues, estamos en igualdad de condiciones para interpretar los estatutos.[9] Claro, ello no implica que podamos descartar libremente las conclusiones e interpretaciones de la agencia,[10] pues es norma reiterada que a toda determinación administrativa le cobija una presunción de regularidad y corrección.[11] Esta presunción, apuntalada en el conocimiento especializado de la agencia, debe respetarse mientras la parte que la impugne no produzca evidencia suficiente para derrotarla.[12]

Es decir, se presume que el organismo administrativo posee un conocimiento especializado en aquellos asuntos que le fueron encomendados por el legislador que merece ser visto con respeto y deferencia. Por ello, nuestra función revisora se circunscribe a evaluar la razonabilidad de la decisión recurrida, a la luz de las pautas trazadas por el legislador y el criterio de evidencia sustancial.[13]

B.

La Ley Núm. 85-2022 fue aprobada con el fin de enmendar el Artículo 308 del Código Penal[14] y el Artículo 3 de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, conocida como la Ley de

---

[7] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, *págs.* 626-627; *Pagán Santiago et al.* v. *ASR*, 185 DPR 341, 358 (2012).
[8] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, pág. 627; *Ifco Recycling*, 184 DPR, *pág.* 744.
[9] 3 LPRA § 9675.
[10] *Batista*, 185 DPR pág. 217.
[11] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, pág. 627; Batista, 185 DPR, pág. 217.; *Ifco Recycling*, 184 DPR, *pág.* 744.
[12] *Torres*, 196 DPR, pág. 626; *Trigo Margarida* v. *Junta Directores*, 187 DPR 384, 393-394 (2012); *Batista,* 185 DPR pág. 215; *Ifco Recycling*, 184 DPR, pág. 744.
[13] *Batista*, 185 DPR, pág. 216; *Accumail P.R.* v. *Junta Sub. A.A.A.,* 170 DPR 821, 829 (2007); *Otero* v. *Toyota*, 163 DPR 716, 729 (2005); *Pacheco* v. *Estancias*, 160 DPR 409, 432 (2003).
[14] 33 LPRA § 5416.

la Junta de Libertad Bajo Palabra (Ley Núm. 118-1974).[15] Dicho estatuto se aprobó con el propósito de "establecer una manera justa, retributiva y rehabilitadora, que le permita a aquella persona convicta por varios delitos el poder ser considerada para libertad bajo palabra al cumplir con los términos de la sentencia más onerosa relacionada directamente con alguno de los delitos por los cuales fue encontrado culpable".[16] La Asamblea Legislativa señaló que la sentencia más larga establecida en el Código Penal es de 99 de años.[17] Ante esto, dependiendo de la naturaleza de los delitos cometidos, en varias ocasiones las sentencias imponen sentencias consecutivas que pueden acumularse a penas de cientos de años de reclusión, en las que se convierten en sentencias de encarcelamiento de por vida, sin darle la posibilidad a la persona convicta de libertad bajo palabra.[18]

En específico, la Sección 1 de la Ley Núm. 85-2022 enmendó el Artículo 308 del Código Penal, y ahora establece lo siguiente:

> Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.
> En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir quince (15) años de su sentencia o cinco (5) años si se trata de un menor de edad procesado y sentenciado como adulto.
> En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra, al cumplir veinticinco (25) años de su sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto.

---

[15] 4 LPRA § 1501, *et seq.*
[16] Exposición de motivos de la Ley Núm. 85-2022.
[17] Íd.
[18] Íd.

Las personas convictas al amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de libertad bajo palabra. **En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos.** Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial.[19]

En cuanto a la enmienda que la Ley Núm. 85-2022 le realizó a la Ley Núm. 118-1974, el Artículo 3 reza como sigue:

[E]n aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos. Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial.

[…].[20]

Por último, la Sección 4 de la Ley Núm. 85-2022 indica que "[l]as disposiciones de esta Ley **prevalecerán sobre cualquier otra disposición de ley que no estuviere en armonía con lo aquí establecido**".[21]

C.

El 15 de junio de 2023, la Secretaria Auxiliar de Programas y Servicios del Departamento de Corrección y Rehabilitación, emitió la Carta Circular Núm. 2023-02, con el fin de establecer el procedimiento a seguir para el cumplimiento de la Ley Núm. 85 de 2022. La misiva indica lo siguiente:

---

[19] 33 LPRA § 5416.
[20] 4 LPRA §1503.
[21] Énfasis nuestro.

Según dispone la mencionada Ley Núm. 85 y los numerosos adiestramientos impartidos, los empleados pertenecientes a la Sección de Récord deben estar llevando a cabo el siguiente procedimiento:

1. Verificarán todos los expedientes criminales de toda la población correccional.

**2. Evaluarán el documento titulado "Hoja de Control sobre Liquidación de Sentencias". De observar más de un término computado, identificarán la sentencia base mayor.**

3. Tomarán en cuenta las sentencias de manera individual. Las sentencias que son consecutivas no deberán estar consolidadas en la nueva revisión. De estar consolidadas, el resultado conllevaría a identificar una pena mayor que no necesariamente sea la correcta para el cómputo final a los fines requeridos por la ley.

**4. Los nuevos cómputos se harán en una nueva "Hoja de Control sobre Liquidación de Sentencia", la cual se identificará como una "Reliquidación".**

5. En virtud de lo anterior, **en la nueva "Hoja de Control sobre Liquidación de Sentencia", identificarán la pena mayor y se observará el mínimo de esa sentencia.** En el caso de que el mínimo sea mayor de 15 años, se atemperará a 15 años, salvo en los casos sentenciados por asesinato en primer grado, que el mínimo será de 25 años naturales.

6. **Computarán en primer orden la pena mayor con el mínima.** Cuando el mínimo de la pena mayor sea menor de 15 años, no se efectuará cómputo adicional. **Solo se pondrá en primer orden**.

7. Todo delito cumplido en su totalidad (máximo y mínimo) será eliminado de la Hoja de Liquidación de Sentencia.

8. Adjudicarán las bonificaciones adicionales al nuevo cómputo en el máximo y en el mínimo, exceptuando los casos de asesinato en primer grado, que solo bonifican en el máximo.

9. Si el delito de la pena mayor (primer orden) excluye las bonificaciones adicionales, no podrán ser acreditadas, aunque el confinado tenga tiempo adjudicado por concepto de trabajo y/o estudios.

10. Computarán los demás términos de las sentencias consecutivas en el mismo orden de la hoja de liquidación anterior y no se computarán mínimos adicionales.

**11. Se considerará y documentará solamente un mínimo, el cual responderá a la pena mayor.**

12. Evidenciarán, además, en la nueva "Hoja de Control sobre Liquidación de Sentencias" lo siguiente:
- Casos pendientes
- Detainer
- Warrant
- Pena Especial

13. Se identificará en el registro de control (libro del área socio penal) cada uno de los casos reliquidados. Además, se indicará la fecha del cumplimiento del mínimo, con el fin de tener de manera accesible la información.

14. Se documentará en el expediente criminal todo el proceso aquí expresado, realizando las anotaciones correspondientes del ejercicio reliquidado en el orden de

los delitos que se adjudicaron, o que ya contenía sus mínimos cumplidos con anterioridad.

15. Una vez el empleado de la Sección de Récord culmine el proceso descrito, referirá la nueva "Hoja de Control sobre Liquidación de Sentencias" a la Unidad de Servicios Sociopenales, para las acciones y los referidos correspondientes, según nuestras leyes y reglamentos.

16. Todos los confinados serán orientados sobre este procedimiento.

Posteriormente, el 11 de octubre de 2023, la Secretaria Auxiliar de Programas y Servicios del Departamento de Corrección y Rehabilitación, notificó Carta Circular Núm. 2023-02, con nuevas directrices sobre la aplicación de la Ley Núm. 85-2022. En específico, la nueva *Carta* dispone lo siguiente:

Según dispone la mencionada Ley Núm. 85 y los numerosos adiestramientos impartidos, los empleados pertenecientes a la Sección de Récord deben estar llevando a cabo el siguiente procedimiento:

1. Verificarán todos los expedientes criminales de toda la población correccional.

2. Evaluarán el documento titulado "Hoja de Control sobre Liquidación de Sentencias". De observar más de un término computado, identificarán la sentencia base mayor.

3. Tomarán en cuenta las sentencias de manera individual. Las sentencias que son consecutivas no deberán estar consolidadas en la nueva revisión. De estar consolidadas, el resultado conllevaría a identificar una pena mayor que no necesariamente sea la correcta para el cómputo final a los fines requeridos por la ley.

4. Los nuevos cómputos se harán en una nueva "Hoja de Control sobre Liquidación de Sentencia", la cual se identificará como una "Reliquidación".

**5. Si la pena mayor resultara ser de un hecho ocurrido estando en una alternativa de reclusión, el término en el que comenzará a cumplir el mínimo de esa pena mayor se computará a partir del cumplimiento del remanente de la pena revocada.**

6. En virtud de lo anterior, en la nueva "Hoja de Control sobre Liquidación de Sentencia", identificarán la pena mayor y se observará el mínimo de esa sentencia. En el caso de que el mínimo sea mayor de 15 años, se atemperará a 15 años, salvo en los casos sentenciados por asesinato en primer grado, que el mínimo será de 25 años naturales.

7. Computarán en primer orden la pena mayor con el mínima. Cuando el mínimo de la pena mayor sea menor de 15 años, no se efectuará cómputo adicional. Solo se pondrá en primer orden.

8. Adjudicarán las bonificaciones adicionales al nuevo cómputo en el máximo y en el mínimo, exceptuando los casos de asesinato en primer grado, que solo bonifican en el máximo.

9. Si el delito de la pena mayor (primer orden) excluye las bonificaciones adicionales, no podrán ser acreditadas, aunque el confinado tenga tiempo adjudicado por concepto de trabajo y/o estudios.

10. Computarán los demás términos de las sentencias consecutivas en el mismo orden de la hoja de liquidación anterior y no se computarán mínimos adicionales.

11. Se considerará y documentará solamente un mínimo, el cual responderá a la pena mayor.

12. **Los delitos cumplidos en su totalidad permanecerán en la nueva "Hoja de Control sobre Liquidación de Sentencias". Por ejemplo, en los casos de asesinato en primer grado cometidos con armas, se computará en primer orden el asesinato en primer grado con el mínimo establecido, beneficiándolo del tiempo en reclusión preventiva. Luego, se incluirán y computarán los demás delitos de la sentencia, incluyendo los de armas**.

[…].

III.

En atención a la publicación de nuevas directrices sobre la aplicación de la Ley Núm. 85-2022, el DCR solicita que le devolvamos el caso para su reevaluación. Nos parece correcta la petición del DCR pues, en el momento que se preparó la *Hoja de Control de Liquidación de Sentencia* que Aguiar Olivo impugna, tales directrices no habían sido emitidas. Por ello, *revocamos* la determinación recurrida y le devolvemos el caso al DCR, según fuera solicitado.

IV.

Por los fundamentos expuestos, *revocamos* la *Resolución* recurrida y devolvemos el caso al Departamento de Corrección y Rehabilitación para que se emita una nueva *Hoja de Control sobre Liquidación de Sentencias* a la luz de la *Carta Circular Núm. 2023-02* del 11 de octubre de 2023.

Lo acordó y manda el Tribunal lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones