ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL X**

| | | |
|---|---|---|
| **LUIS DANIEL SAMBOLIN ROBLES** <br> RECURRENTE(S) <br><br><br> V. <br><br><br> **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** <br> RECURRIDA(S) | KLRA202400203 | ***Revisión de Decisión Administrativa*** <br> procedente del <br> **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** <br><br> Caso Núm.: <br> **GMA1000-306-23** <br><br><br> Sobre: <br> Remedio Administrativo |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 30 de julio de 2024.

Comparece ante nos el señor **LUIS DANIEL SAMBOLIN ROBLES** (señor **SAMBOLIN ROBLES**), por derecho propio e *in forma pauperis*, mediante *Certiorari* instado el 28 de marzo de 2024. En su recurso, nos solicita que revisemos la *Respuesta del Área Concernida/Superintendente* (*Respuesta*) decretada el 2 de enero de 2024 por la División de Remedios Administrativos del **Departamento de Corrección y Rehabilitación (DCR)**.[1] En la antedicha *Respuesta*, el **DCR** dispuso:

> "[l]uego de evaluar su expediente, usted ya fue acreedor de la Ley 87, según corresponde y la Ley 66, no le corresponde, ya que usted no está "disfrutando de los beneficios que le concede la Junta de Libertad Bajo Palabra....por conceptos de buena conducta y asiduidad, trabajo, estudio y otros servicios; y para otros fines relacionados".

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Esta determinación administrativa fue notificada el 11 de enero de 2024. Apéndice del *Certiorari,* pág. 7.

Número Identificador:
SEN2024_____

**- I -**

El 27 de noviembre de 2023, el señor **Sambolin Robles** suscribió una *Solicitud de Remedio Administrativo* en la cual explicó que había requerido "el otro 20% de bonificaciones de la Ley que firmó el Gobernador...me dieron el 20% por la Ley 87, se comenta que están dando el otro 20% de la Ley 66 del 19/julio/2022".[2] Dicha *Solicitud* fue entregada el 7 de diciembre de 2023 en la División de Remedios Administrativos del **DCR**.

El 2 de enero de 2024, se dictó la *Respuesta* impugnada. Esta decisión administrativa fue recibida el 11 de enero de 2024. Así las cosas, el 29 de febrero de 2024, el señor **Sambolin Robles** presentó una *Solicitud de Reconsideración* con la cual acompañó copia de las leyes 87-2020 y 66-2022.[3] Ese mismo día, se emitió la *Respuesta de Reconsideración al Miembro de la Población Correccional* en la cual se denegó la petición de reconsideración y se modificó la contestación del Área de Récord.[4] Esta *Respuesta* expone: "Sr. Santiago Pagán, en la Solicitud de Remedio usted expresó su interés en que se le aplique la Ley 66. Nuevamente le informamos que la Ley 66 va dirigida a los liberados, que se están beneficiando de libertad bajo palabra; que estudien y/o estén laborando. Usted no cualifica para la aplicación de dicha ley". Dicha *Respuesta* fue entregada el 29 de febrero de 2024.

Insatisfecho, el señor **Sambolin Robles** acudió ante este foro intermedio revisor.

A tenor con la Regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, este Foro puede "prescindir de términos no jurisdiccionales, específicos," escritos, notificaciones o procedimientos adicionales, "con el propósito de lograr su más justo y eficiente despacho...". Ante ello, prescindimos de la comparecencia del **Departamento de Corrección y Rehabilitación (DCR)** por conducto de la Oficina del Procurador General. Evaluado concienzudamente el expediente del caso, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

---

[2] Apéndice del *Certiorari,* pág. 6.
[3] *Íd.*, págs. 8 y 11- 21.
[4] *Íd.*, págs. 9- 10.

- II -

## A. Revisión Administrativa

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[5] Su sección 4.1 instituye la revisión judicial por este Tribunal de Apelaciones de las determinaciones finales de las agencias.[6]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[7] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[8] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[9]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[10] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[11]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[12] Particularmente, concretó las normas básicas sobre el alcance de la revisión judicial al expresar:

---

[5] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).

[6] 3 LPRA § 9671.

[7] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004).

[8] *Otero v. Toyota*, 163 DPR 716 (2005).

[9] *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).

[10] *Torres Rivera v. Policía de PR,* 196 DPR 606, 625- 626 (2016)*; García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 891 (2008).

[11] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).

[12] *Torres Rivera v. Policía de PR, supra.*

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la revisión de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[13]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[14] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[15] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[16] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[17] A esto se le conoce como la norma de la *evidencia sustancial*, con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[18] Por lo tanto, aun cuando exista más de una interpretación

---

[13] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud*, 210 DPR 79 (2022).
[14] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).
[15] *Otero v. Toyota, supra*, pág. 728.
[16] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[17] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[18] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003).

razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[19]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[20] Aun así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[21]

En suma, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[22] Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[23]

### - B - Departamento de Corrección y Bonificaciones

La Constitución del Estado Libre Asociado de Puerto Rico, en su sección 19 del Artículo VI, preceptúa que como parte de la política pública del Estado se reglamentarán "(...) las instituciones penales para que sirvan sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para *hacer posible su rehabilitación moral y social*".[24]

El 21 de noviembre de 2011, se aprobó el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, según enmendado (Plan de Reorganización).[25] Este Plan de Reorganización sustituyó la *Ley Orgánica de la Administración de Corrección*.[26] Ello, entre otras cosas, con el propósito de reorganizar el **Departamento de Corrección y Rehabilitación (DCR);** consolidando con éste la Administración de Corrección (AC) y la Administración

---

[19] *Íd.*
[20] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[21] *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011).
[22] *García Reyes v. Cruz Auto Corp., supra*, pág. 893.
[23] *Capó Cruz v. Junta de Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo, supra.*
[24] Art. VI, Sec. 19, Const. ELA [Const. PR], LPRA, Tomo 1.
[25] 3 LPRA, Ap. XVIII, Art. 11.
[26] Conocida como la Ley Núm. 116 de 22 de julio de 1974, según enmendada.3 LPRA Ap. XVIII.

de Instituciones Juveniles (AIJ); y "la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezca procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad".[27]

Una de las herramientas para propiciar la rehabilitación moral de los ciudadanos que han cometido un delito es el otorgamiento de bonificaciones por buena conducta y asiduidad.[28] Empero, el legislador, con la aprobación del Código Penal de 2004, derogó las bonificaciones automáticas por buena conducta y asiduidad para los ciudadanos que hayan sido sentenciados bajo dicha normativa.[29] Asimismo, cuando se aprobó el Código Penal de 2012 no se restituyeron las bonificaciones contempladas en el Código Penal de 1974.[30]

El Artículo 11 del Plan de Reorganización dispone el método a utilizarse para computar las bonificaciones por buena conducta y asiduidad. Así las cosas, la Ley Núm. 87 de 4 de agosto de 2020 enmendó el Artículo 11 del Plan de Reorganización.[31] Dicho Artículo lee:

> Artículo 11- Sistema de rebaja de términos de sentencias
> Toda persona sentenciada a cumplir término de reclusión en cualquier institución, antes de la vigencia del Código Penal de Puerto Rico de 2004, que esté disfrutando de un permiso concedido a tenor con lo dispuesto en este Plan o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación o disfrutando de libertad bajo palabra, que observare buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la institución de que se trate o desde que se concede la libertad bajo palabra:
> (a)      por una sentencia que no excediere de quince (15) años, doce (12) días en cada mes; o
> (b)      por una sentencia de quince (15) años o más, trece (13) días por cada mes.
> Dicha rebaja se hará por el mes natural, que representará un plazo de 30 días. Si la sentencia contuviere una fracción de mes, bien sea al principio o al fin de dicha sentencia, se le abonarán dos (2) días por cada cinco (5) días o parte de los mismos, contados en dicha fracción.

---

[27] Véase Exposición de Motivos de la Ley Núm. 2- 2011.
[28] Véase Exposición de Motivos de la Ley Núm. 87– 2020.
[29] *Id*.
[30] *Id.*
[31] Ley 87- 2020.

> Toda persona sentenciada a cumplir término de reclusión en cualquier institución, con posterioridad a la vigencia del Código Penal de 2004, que esté disfrutando de un permiso concedido a tenor con lo dispuesto en este Plan, o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación, que observare buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la institución de que se trate:
> (c) por una sentencia que no excediere de quince (15) años, seis (6) días en cada mes; o
> (d) por una sentencia de quince (15) años o más, siete (7) días por cada mes. [...].[32]

Posteriormente, el 19 de julio de 2022, se aprobó la Ley Núm. 66- 2022. Ello, con el propósito de aclarar los Artículos 3, 11 y 12 del Plan de Reorganización. Mediante la Sección 2 de la Ley Núm. 66– 2022 se enmendó el Artículo 11 del Plan de Reorganización a los fines de incorporar:

> Toda persona sentenciada a cumplir término de reclusión en cualquier institución, antes de la vigencia del Código Penal de Puerto Rico de 2004, que esté disfrutando de un permiso concedido a tenor con lo dispuesto en este Plan o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación, o disfrutando de libertad bajo palabra *concedida por la Junta de Libertad Bajo Palabra*, y que observare buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la institución de que se trate o desde que se concede la libertad bajo palabra:
> a)...
> b)...
> c)...
> d)...
> *Queda excluida de los abonos que establece este Artículo, toda convicción por abuso sexual infantil; lo cual significa, incurrir en conducta sexual en presencia de un menor, en la que se utilice a un menor, o ambos, voluntaria o involuntariamente, para ejecutar conducta sexual dirigida a satisfacer la lascivia o cualquier acto que, de procesarse por la vía criminal, configuraría cualesquiera de los siguientes delitos: agresión sexual, actos lascivos, comercio de personas para actos sexuales, exposiciones obscenas, proposición obscena, trata humana, secuestro agravado, proxenetismo, rufianismo, producción de pornografía infantil, posesión y distribución de pornografía infantil, utilización de un menor para pornografía infantil, envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno y espectáculos obscenos, según han sido tipificados en el Código Penal de Puerto Rico.*
> *Las rebajas de términos de sentencias dispuestas en este Artículo por buena conducta y asiduidad, aplicarán a toda persona sentenciada a cumplir término de reclusión bajo cualquier Código Penal de Puerto Rico o delito cometido bajo cualquier ley penal especial que en sus disposiciones no las excluya, independientemente se encuentre dentro de una institución correccional o esté cumpliendo el restante de su sentencia de reclusión a través de un permiso concedido a tenor con lo dispuesto en este Plan o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación o se encuentre disfrutando de libertad bajo palabra.*[33]

---

[32] *Id.*
[33] 3 LPRA, Ap. XVIII, Art. 11.

Por otro lado, el Artículo 12 sobre las "Bonificaciones por trabajo, estudio o servicios" expresa.

A toda persona sentenciada a cumplir pena de reclusión por hechos cometidos con anterioridad o bajo la vigencia del Código Penal de Puerto Rico vigente, en adición a las bonificaciones autorizadas en el Artículo anterior, el Secretario o el Presidente de la Junta de Libertad Bajo Palabra, según aplique, podrán conceder bonificaciones a razón de no más de cinco (5) días por cada mes en que el integrante de la población correccional o liberado por la Junta de Libertad Bajo Palabra esté empleado en alguna industria o que esté realizando estudios como parte de un plan institucional, bien sea en la libre comunidad o en el establecimiento penal donde cumple su sentencia, y preste servicio a la institución correccional durante el primer año de reclusión. Por cada año subsiguiente, podrá abonarse hasta siete (7) días por cada mes.
Si la prestación de trabajo o servicios por el integrante de la población correccional o liberado por la Junta de Libertad Bajo Palabra fuere de labores agropecuarias, el Secretario deberá conceder bonificaciones mensuales hasta un monto no mayor de siete (7) días durante el primer año de cumplimiento de su sentencia y hasta un monto no mayor de diez (10) días mensuales durante los períodos de cumplimiento de su sentencia subsiguientes al primer año.

Esta clarificación es para que no haya duda de que las personas *que estén disfrutando del privilegio de libertad bajo palabra serán acreedores de las bonificaciones por buena conducta, asiduidad, estudio, trabajo y otros servicios, de manera que, aunque estén en la libre comunidad puedan extinguir más rápidamente su sentencia utilizando herramientas de probada utilidad para evitar la reincidencia, como lo son los estudios y el trabajo.*[34]

- III –

En el caso de marras, el señor **SAMBOLIN ROBLES** no hizo señalamiento de error alguno que podamos discutir propiamente. Empero, solicita que se revise la *Respuesta del Área Concernida/Superintendente* (*Respuesta*) decretada el 2 de enero de 2024 por la División de Remedios Administrativos del **Departamento de Corrección y Rehabilitación** (**DCR**). El señor **SAMBOLIN ROBLES**, en esencia, alegó que el **DCR** le concedió las bonificaciones de la Ley 87- 2020, pero **no** las bonificaciones de la Ley 66 de 2022. Sostuvo que se le debe conceder el otro 20% de la reducción de su pena en conformidad con la Ley 66 de 2022.

---

[34] Véase Exposición de Motivos de la Ley Núm. 66– 2022.

Por otro lado, surge de la *Respuesta* que el señor **SAMBOLIN ROBLES** no cualifica para la aplicación de la Ley 66 de 2022, toda vez que el estatuto va dirigido a los liberados que estudien y/o laboren.

Razonamos que el señor **SAMBOLIN ROBLES** tiene una interpretación errada sobre lo dispuesto por la Ley Núm. 66 de 2022. Como mencionamos, la Ley Núm. 66- 2022 sólo enmendó el Artículo 11 del Plan de Reorganización para puntualizar que tanto las personas institucionalizadas como aquellas que estén disfrutando del privilegio de libertad bajo palabra serán acreedoras de las bonificaciones por buena conducta, asiduidad, estudio, trabajo y otros servicios. Esto es, que las bonificaciones también aplicarán a la población que está en libertad bajo palabra. Empero, la enmienda contemplada por la Ley Núm. 66 de 2022 no representa una alteración a la cuantía de los días a concederse por las bonificaciones por buena conducta y asiduidad que reducen la sentencia.

En resumidas cuentas, consideramos que la interpretación del **DCR** contenida en su *Respuesta* es correcta en derecho; es una razonable; sustentada por una presunción de corrección; y no existen fundamentos o motivos que justifiquen nuestra intervención con la discreción administrativa. De otra parte, el señor **SAMBOLIN ROBLES** reconoce que se le concedieron las bonificaciones del Artículo 11 de la Ley Núm. 87– 2020. Por lo tanto, las alegaciones del señor **SAMBOLIN ROBLES** carecen de fundamento para derrotar la presunción de validez de la *Respuesta*. Máxime, cuando no nos ha colocado en posición de alterar la decisión administrativa. Es por ello, que no procede que sustituyamos el criterio administrativo por la nuestra. Tampoco se ha demostrado que la agencia administrativa haya actuado de manera arbitraria o ilegal, o en forma tan irrazonable que haya abusado de su discreción. Por ello, discernimos que el **DCR** no cometió error alguno.

- IV -

Por los fundamentos antes expuestos, ***confirmamos*** la *Respuesta de Reconsideración* dictaminada el 29 de febrero de 2024 por la División de Remedios Administrativos del **Departamento de Corrección y Rehabilitación (DCR)**.

**Notifíquese inmediatamente.**

**Notifíquese al(a la) señor(a) Luis Daniel Sambolin Robles quien se encuentra bajo la custodia del Departamento de Corrección y Rehabilitación: Institución Guayama 1000 Mod.-1-A 204 P.O. Box 10009 Guayama, PR 00785 o en cualquier institución en donde se encuentre.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones