ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**

| | | |
|---|---|---|
| **PEDRO ROMERO ROSA**<br>RECURRENTE(S)<br><br>V.<br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**<br>RECURRIDA(S) | **KLRA202500025** | *REVISIÓN DE DECISIÓN ADMINISTRATIVA*<br>procedente del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**<br><br>Caso Núm.:<br>**219-24-135**<br><br>Sobre:<br>Remedio Administrativo (Procedimiento Disciplinario) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 31 de marzo de 2025.

Comparece ante este Tribunal de Apelaciones, el señor **PEDRO ROMERO ROSA** (señor **ROMERO ROSA**), por derecho propio e *in forma pauperis*, mediante *Apelación* incoada el 23 de diciembre de 2024. En su recurso, nos solicita que revisemos la *Resolución (Querella Disciplinaria)* decretada el 9 de octubre de 2024 por la División de Disciplina de Confinados del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** en la cual, entre otras cosas, se declaró incurso de infringir los Códigos 117 y 128 del *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional* (*Reglamento Disciplinario*), *Reglamento* Núm. 9221-2020 al señor **ROMERO ROSA**.[1]

_____

[1] Esta determinación administrativa fue notificada el 22 de octubre de 2024. Apéndice del *Escrito en Cumplimiento de Orden,* págs. 16- 18 y 15.

Número Identificador:
SEN2025_____

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 18 de agosto de 2024, el sargento RICHARD MORALES CRUZ (sargento MORALES CRUZ) interpuso un *Informe Disciplinario (Querella)* en la cual enunció que:

> "durante el día de hoy 17-Agosto-2024 turno 2/10 pm, me informa vía radio comunicación la oficial Elisa Rivera Ortiz #15181 asignada a la ronda de la vivienda 2ª sobre una situación en el módulo H, de inmediato me presentó al área y me entrevisto con la oficial antes señalada y esta me refiere que mientras se encontraba realizando el recuento formal de las 6pm en el módulo H, alrededor de las 6:23pm, al pasar por la celda #104 perteneciente al confinado Wilfredo Báez Acosta este le indica que durante horas de la tarde varios confinados se habían metido a su celda y tras haberle llevado artículos de la comisaria junto con varias pertenencias más, también lo habían agredido, de inmediato este que suscribe Sgto. Richard Morales #8-13323 ordene a la oficial E. Rivera que bajara al confinado agredido Wilfredo Báez Acosta hasta el área de admisiones en donde procedí a entrevistarlo, este confinado en referencia me confesó y declaró por medio escrito todo lo antes señalado, acusando a los confinados: Pedro Laureano Negrón y Pedro Romero Rosa ambos confinados pertenecientes a la celda #2H-205, Jeremy Guzmán Fuentes y José M. Claudio Cedeño ambos pertenecientes a la celda #2H-201 y al confinado Emmanuel González Arce perteneciente a la celda #2H-204. Luego de haberle tomado la declaración al confinado Wilfredo Báez Acosta se procede a tomarle fotografías de los golpes recibidos y a brindarle los servicios médicos en el área de Sala Emergencia de la institución en donde este fue evaluado por el Dr. Magid #023447, se procede a llamar a la Policía de P.R. Distrito de Guayama Reten Agente: Carmen Herrera #23014, se presenta el Agente: Reyes #17120 quien se hace cargo de la investigación".[2]

Al día siguiente, el 19 de agosto de 2024, el comandante OSCAR MARTÍNEZ CRUZ cursó un memorando al superintendente de la institución Guayama 1000 informando sobre la alegada agresión al miembro poblacional WILFREDO BÁEZ ACOSTA.[3] Así las cosas, el 21 de agosto de 2024, se inició la investigación del antedicho *Informe Disciplinario (Querella)* y la misma culminó el 3 de septiembre de 2024.[4] En esta última fecha, se entregó un *Reporte de Cargos* al señor ROMERO

---

[2] Apéndice del *Escrito en Cumplimiento de Orden,* págs. 21- 24. El 17 de agosto de 2024, la oficial ELISA RIVERA ORTIZ rindió un *Informe de Incidente*. Apéndice del *Escrito en Cumplimiento de Orden,* pág. 40. Además, el sargento MORALES CRUZ cumplimentó el *Informe Diario de Noticias, Incidentes o Incidentes Graves* e *Informe Institucional de Incidentes Graves*. Apéndice del *Escrito en Cumplimiento de Orden*, págs. 41- 44.

[3] *Íd.,* pág. 35.

[4] El 21 de agosto de 2024, se le suministró documento intitulado *Derechos que le Asisten al Confinado Cuando se le Radica un Informe Disciplinario* al señor ROMERO ROSA. Apéndice del *Escrito en Cumplimiento de Orden*, pág. 33.

**ROSA**; y se diligenció la *Citación para Vista Administrativa Disciplinaria* en la cual se pautó audiencia para el 9 de octubre de 2024.[5] El mismo día, el señor **ROMERO ROSA**, rubricó una *Declaración*.[6] Celebrada la audiencia, el oficial examinador rindió la *Resolución* impugnada.

Ante ello, el 23 de octubre de 2024, el señor **ROMERO ROSA** instó una *Solicitud de Reconsideración* en la cual manifestó, en lo pertinente, que "[a]l no encontrar los elementos de juicio del código 128 se debió enmendar el Informe[,] realizar una vista nueva [lo cual] no se realizó porque ya la de[c]i[s]ión estaba tomada [...]. Como es posible que la querella se haya radicado el 18 de agosto y la vista se haya celebrado el 9 de agosto de 2024".[7] El 4 de noviembre de 2024, se dictó *Resolución* notificando que el petitorio de reconsideración fue recibido y sería atendido dentro del plazo de noventa (90) días.[8] Posteriormente, el 17 de diciembre de 2024, se dictaminó una *Resolución Enmienda Nunc Pro Tunc* en la cual se enmendaron los encasillados 12 y 18 de la mencionada *Resolución*.[9] Esta decisión, en lo que respecta, lee: "Encasillado # 12: El Oficial Examinador de Vistas Disciplinarias determina lo siguiente: Cometió el acto prohibido siguiente: Código 117 (No existe causa por el Código 128). Encasillado # 18: Fecha de la Vista Disciplinaria 9 de octubre de 2024.

Inconforme, el pasado 23 de diciembre, el señor **ROMERO ROSA** acudió ante este Tribunal de Apelaciones mediante una *Apelación.* En su escrito, señala el(los) siguiente(s) error(es):

> Erró el Departamento de Corrección y Rehabilitación en acusar 5 confinados y en el proceso disciplinario de momento desapareció uno de los acusados puede ser cor[r]oborado en el anejo I Informe de Querella de Incidente Disciplinario por que desapareció del proceso uno de los acusados.

> Erró el Departamento de Corrección y Rehabilitación en el Código 128 robo fue desestimado por que la ver[s]ión del confinado Wilfredo Báez Acosta no contaba con credi[b]ilidad como puede ser que tu[v]iera credi[b]ilidad para sostener el código 117 agresión es algo totalmente ilógico y sin sentido.

---

[5] Apéndice del *Escrito en Cumplimiento de Orden*, págs. 19- 24.
[6] *Íd.*, págs. 29- 32.
[7] *Íd.*, págs. 5- 10.
[8] *Íd.*, pág. 4.
[9] *Íd.*, págs. 2- 3.

Erró el Departamento de Corrección y Rehabilitación en alentar los confinados a radicar este tipo de querellas debido que cuando los confinados recurren a este tipo de procesos es por que cuando lo hacen es con el único fin de que sean trasladados a su institución correccional de su preferencia institución 501 Bayamón y como el Departamento de Corrección [ha] alentado este proceso sea propagado este tipo de querellas. Pueden [v]erificar las estadísticas que ha sido de esta manera.

El 29 de enero de 2025, pronunciamos *Resolución* concediendo un plazo de treinta (30) días para exponer su posición sobre la revisión judicial al **DCR**, por conducto de la Oficina del Procurador General de Puerto Rico. Finalmente, el 17 de marzo de 2024, el **DCR**, por conducto de la Oficina del Procurador General de Puerto Rico, presentó su *Escrito en Cumplimiento de Resolución* en el cual precisó, entre otras cosas, que la determinación administrativa está sustentada por la evidencia sustancial que obra en el expediente.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

**A. *Revisión Administrativa***

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[10] Su sección 4.1 instituye la *revisión judicial* de las determinaciones finales de las agencias por este Tribunal de Apelaciones.[11]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[12] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[13] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma

---

[10] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[11] 3 LPRA § 9671.
[12] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004).
[13] *Otero v. Toyota*, 163 DPR 716 (2005).

arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[14]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[15] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[16] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[17]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[18] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[19]

---

[14] *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).
[15] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625- 626 (2016)*; García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).
[16] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).
[17] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).
[18] *Torres Rivera v. Policía de PR, supra.*
[19] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud*, 210 DPR 79 (2022).

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[20] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[21] Debido a la presunción de legalidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[22] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[23] De modo que no podrá basarse únicamente en simple alegaciones. A esto se le conoce como la norma de la *evidencia sustancial*, con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[24] Aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[25]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[26] Así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[27]

En resumen, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[28] Por el contrario, los tribunales revisores podemos intervenir con

---

[20] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).
[21] *Otero v. Toyota, supra*, pág. 728.
[22] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[23] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[24] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003).
[25] *Íd.*
[26] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[27] *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011).
[28] *García Reyes v. Cruz Auto Corp., supra*, pág. 893.

la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[29] Del mismo modo, el Prof. Echevarría Vargas ha puntualizado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[30]

### B. *Reglamento 9221*

El 8 de octubre de 2020, se aprobó el *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional (Reglamento),* conocido como el *Reglamento 9221*. El objetivo de dicho *Reglamento* es establecer de manera clara y especifica el procedimiento disciplinario para la población correccional en aras de mantener el orden, la tranquilidad y el funcionamiento adecuado de las instituciones del Departamento de Corrección y Rehabilitación (DCR).[31]

En tales circunstancias, la Regla 4 del *Reglamento* define el *acto prohibido* como "cualquier acto que implique una violación a las normas de conducta de la institución que conlleve la imposición de medidas disciplinarias, incluyendo cualquier acto u omisión, o conducta tipificada como delito". La *medida disciplinaria* se concreta como "determinación del Oficial Examinador impuesta al miembro de la población correccional con posterioridad a la celebración de la vista disciplinaria administrativa como resultado de encontrarse incurso en la comisión de uno o más actos prohibidos, según tipificados en este Reglamento".

Por otro lado, su Regla 6 sobre *querella disciplinaria*, en lo pertinente, expone:

> "Cualquier persona, visitante, miembro de la población correccional, empleado civil de la institución, oficial correccional, funcionario del Departamento de Corrección y Rehabilitación o empleado de otra agencia que trabaje en la institución, puede presentar una querella contra un miembro de la población correccional, utilizando el formulario suministrado para tales propósitos, en las siguientes circunstancias:
> 1. Cuando **sea víctima de un acto o incidente prohibido** provocado por un miembro de la población correccional; o [...]
> 2. Cuando **sea testigo de un acto o incidente prohibido**, o infracción a las normas y reglamentos del Departamento de

---

[29] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo, supra*.

[30] Echevarría Vargas, J. A., *Derecho Administrativo Puertorriqueño,* 5ta. ed. Rev., San Juan, Ed. Situm, 2023, pág. 340.

[31] *Reglamento para Establecer el Procedimiento Disciplinario para la Población Correccional, Reglamento* Núm. 9221 de 8 de octubre de 2020, pág. 2.

Corrección y Rehabilitación por parte de un miembro de la población correccional" o [...].

En cambio, la Regla 10 sobre *emplazamiento,* en lo concerniente, manifiesta:

"B. **Se le advertirá al querellado sobre los siguientes derechos que le asisten durante el procedimiento disciplinario administrativo**:
1. Derecho a guardar silencio.
2. Derecho a recibir asistencia del Oficial de Querellas.
3. Podrá solicitar al Oficial de Querellas que entreviste testigos específicos y los interrogue con preguntas específicas previamente sometidas por el miembro de la población correccional.
4. Advertencia de que su declaración debe ser libre y voluntaria. Ninguna técnica de presión, amenaza, coerción o intimidación puede ejercerse para forzarlo a responder...[...]".

Asimismo, la Regla 12 sobre *investigación*, en lo que respecta, dispone:

"Todo caso de querella disciplinaria estará sujeto a la correspondiente investigación llevada a cabo por el Oficial de Querellas. Los procedimientos inherentes a la investigación son:
1. **Entrevistar e interrogar a toda persona relacionada, directa o indirectamente con los hechos imputados, incluyendo al miembro de la población correccional o los testigos solicitados por éste**. [...].
4. El Oficial de Querellas deberá investigar en detalle la versión de hechos presentada por el querellado. [...]...
9. El Oficial de Querellas redactará un informe completo y detallado que contenga las declaraciones de todos los testigos y la prueba/evidencia recopilada. [...].

Los *actos prohibidos* dentro de las instituciones correccionales están contemplados en las Reglas 14, 15 y 16. Las *medidas disciplinarias* que se impondrán cuando se haya determinado que se ha incurrido en alguna conducta indebida están comprendidas en la Regla 17 del aludido *Reglamento*. Entre las *medidas disciplinarias* están: cancelación de bonificaciones por buena conducta; segregación disciplinaria; traslado o cambio de custodia por razones disciplinarias; restitución monetaria; privación de privilegios; cambio o traslado a un área distinta de vivienda; remoción de un programa o actividad grupal en la cual participe; perdida o suspensión de empleo; ocupación y retención de la propiedad del miembro de la población correccional; amonestación por escrito; y revocación de contrato de participantes en algún privilegio a miembros de población correccional participantes de programas de desvío.

El oficial examinador, quien es el funcionario nombrado por el secretario del Departamento de Corrección y Rehabilitación (DCR), presidirá las audiencias administrativas disciplinarias por infracciones a las normas de conducta institucional conforme el *Reglamento;* los casos de audiencias sobre revocación de programas de desvió; y la consideración y disposición de las solicitudes de reconsideración de sus decisiones.[32] Para dichas audiencias, será deber de todo querellante y querellado, que haya recibido una notificación, comparecer excepto que el querellado haya renunciado expresamente a este derecho, se encuentre fugitivo o sea excluido por razones de seguridad. Si un querellado rehúsa comparecer a la audiencia, deberá notificar mediante escrito la causa de su incomparecencia. Si se hallase evadido al momento de la audiencia, se entenderá como una renuncia tacita.

Por tanto, el oficial examinador podrá celebrar una audiencia en ausencia, siempre y cuando estén presente una o más de las siguientes circunstancias: "a. Cuando el querellado se rehúsa a comparecer a la vista; b. Cuando el querellado se encuentre evadido; c. Cuando el querellado, luego de haber sido debidamente notificado, no comparece a la vista sin justa causa; d. Cuando el querellado ha sido excluido de la vista por razones de seguridad".[33]

De esta manera, el oficial examinador tiene la autoridad para reclasificar el código de la querella imputado al querellado miembro de la población correccional y enmendar el *Informe de Querella de Incidente Disciplinaria.* De ser necesario tal enmienda, el oficial examinador, para salvaguardar el señalamiento y la celebración de un procedimiento administrativo disciplinario al amparo del debido proceso de ley, suspenderá la audiencia administrativa; ordenará que se realice la enmienda por escrito con su posterior notificación al querellado; y recalendarizará una nueva vista administrativa.[34] El oficial examinador considerará toda la prueba presentada durante la audiencia; tomará una determinación fundamentada en los

---

[32] Regla 25 del *Reglamento.*
[33] Regla 25 (4) del *Reglamento.*
[34] Regla 28 del Reglamento.

méritos de la evidencia (preponderancia de la prueba); y dictará resolución en la cual podrá tomar una o más de las siguientes determinaciones:

> "a.       Declarar al miembro de la población correccional incurso en la comisión del acto prohibido imputado.
> b.       Imponer las sanciones correspondientes al nivel de severidad del acto prohibido imputado.
> c.       Declarar al miembro de la población correccional No Incurso.
> d.       Desestimar la querella, cuando no haya prueba suficiente para sostener la imputación contra el miembro de la población correccional querellado, o si no habiendo controversia real en los hechos, como cuestión de derecho procede se dicte resolución a favor de éste....[...]".

Incluso, en la Regla 31 sobre *presentación de testigos durante la vista ante el Oficial Examinador* se especifica que:

> "1. El Oficial Examinador y el miembro de la población correccional- querellado **podrán solicitar la presencia de testigos** que tengan información pertinente y estén razonablemente disponible...[...]...
> 3.  No será necesaria ni se solicitara la comparecencia de testigos para presentar evidencia repetitiva, ni testigos adversos, cuando su conocimiento sobre el incidente surja de manea clara de la querella disciplinaria, documentos complementarios o del informe del Oficial de Querellas...[...]".

Por último, la Regla 36 sobre *reconsideración de las decisiones emitidas por el Oficial Examinador* pormenoriza que la parte adversamente afectada por una resolución podrá "dentro del término de veinte (20) días desde la fecha de la notificación de la resolución, presentar una moción de reconsideración de la resolución". El DCR deberá considerar dicha petición dentro del plazo de quince (15) días. Si se rechazare de plano o no actuare dentro de los quince (15) días, el término para instar revisión judicial comenzara a decursar desde que se notifique la denegatoria o expiren los quince (15) días. Si la reconsideración fuese acogida, se deberá decretar resolución dentro del periodo de noventa (90) días siguientes a la presentación de la reconsideración. Si se acogiese el petitorio de reconsideración, pero no se actuará dentro de los noventa (90) días, el DCR perderá jurisdicción y se deberá acudir en revisión judicial a partir del vencimiento del mencionado intervalo, salvo que por justa causa y dentro del lapso, el DCR prorrogue el tiempo. Una parte adversamente afectada por la resolución final del DCR, en treinta (30) días, podrá acudir mediante revisión ante el Tribunal de Apelaciones.

## - III –

En su escrito, el señor **ROMERO ROSA** hizo tres (3) señalamientos de error. En síntesis, solicitó en su *Apelación* la desestimación del proceso disciplinario 219-24-135.

El **DCR** adujo que la decisión administrativa es conforme a derecho y está sustentada por la evidencia sustancial que obra en el expediente administrativo, así como ninguno de los errores se cometió. Punteó que el señor **ROMERO ROSA** no acreditó la existencia de evidencia que menoscabe o reduzca la presunción de regularidad y corrección que reviste la determinación recurrida. En consecuencia, no existiendo una actuación arbitraria, ilegal o irrazonable por parte del **DCR** debe confirmarse la *Resolución (Querella Disciplinaria)*.

En consideración al expediente administrativo y en conformidad con el derecho aplicable, colegimos que el **DCR** cumplió a cabalidad con sus obligaciones y observó todas las garantías del debido proceso de ley que cobijan al señor **ROMERO ROSA** durante el procedimiento disciplinario entablado en su contra. Esto es, fue debidamente notificado de la querella disciplinaria; citado oportunamente a la audiencia administrativa, a la cual compareció; apercibido de que podía solicitar la entrevista de testigos; y tuvo la oportunidad de presentar y refutar evidencia, así como de presentar una solicitud de reconsideración. Para la audiencia, el señor **ROMERO ROSA** fue juramentado y se escuchó su testimonio.[35]

Las determinaciones de hechos, las conclusiones de derecho y la decisión administrativa están razonablemente sustentadas por toda la documentación presentada ante la consideración de la oficial examinador. El oficial examinador escudriñó la totalidad del expediente administrativo, quedando comprobado que el señor **ROMERO ROSA** participó en el incidente acontecido el 17 de agosto de 2024. Ante ello, el señor **ROMERO ROSA** incurrió en la conducta expresamente prohibida por el Código 117 del *Reglamento*.[36]

---

[35] Apéndice del *Escrito en Cumplimiento de Orden,* pág. 17.

[36] El día 17 de diciembre de 2024, se prescribió la *Resolución Enmienda Nunc Pro Tunc.* En la *Resolución Enmienda Nunc Pro Tunc* se enmendaron los encasillados 12 y 18 de la aludida *Resolución.* En lo que nos ataña estos concretan: "Encasillado # 12: El Oficial Examinador de Vistas Disciplinarias determina lo siguiente: Cometió el acto prohibido siguiente: **Código 117 (No existe causa por el Código 128)**. Encasillado # 18: Fecha de la Vista Disciplinaria **9 de octubre de 2024**".

Consideramos que no existen fundamentos o motivos que justifiquen nuestra intervención con la discreción administrativa del **DCR,** en torno a un asunto de seguridad institucional. Las alegaciones del señor **ROMERO ROSA** carecen de fundamento para derrotar la presunción de validez de la *Resolución*. Es por ello que no procede que sustituyamos el criterio administrativo por la nuestra toda vez que el oficial examinador del **DCR** estuvo en mejor posición para la apreciación de toda la prueba. Tampoco se ha demostrado que la agencia administrativa haya actuado de manera arbitraria o ilegal, o en forma tan irrazonable que haya abusado de su discreción. Entendemos que debemos abstenernos de intervenir con la *Resolución (Querella Disciplinaria)* dado que esta coincide con el interés apremiante del Estado de mantener el orden y la seguridad en las instituciones correccionales. Por ello, discernimos que el **DCR** no incidió en el(los) error(es).

- **IV** -

Por los fundamentos antes expuestos, ***confirmamos*** la *Resolución (Querella Disciplinaria)* pronunciada el 9 de octubre de 2024 por la División de Disciplinas de Confinados del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**).

**Notifíquese inmediatamente.**

**Notifíquese al(a la) señor(a) PEDRO ROMERO ROSA quien se encuentra bajo la custodia del DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR): Institución Guayama 1000 Máxima Edif. 1-B-211 PO Box 10009 Guayama, PR 00785 o en cualquier institución en donde se encuentre.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

Estas enmiendas fueron para corregir unos errores de forma señalados en la solicitud de reconsideración del señor **ROMERO ROSA.** Estos errores de forma no menoscabaron sus derechos procesales.